(No. 20418.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN B. COLEGROVE, Plaintiff in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 10, 1931.*

HERSHEY & VOGELSANG, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, HARRY B. GRUNDY, State's Attorney, CARL I. DIETZ, and LOTT R. HERRICK, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was found guilty in the circuit court of Christian county of the larceny of two certain mortgages and notes, the property of one Josiah Hall, and sentenced

to the Southern Illinois penitentiary. He brings this writ of error to review that judgment.

Plaintiff in error was president of the John B. Colegrove and Company State Bank of Taylorville and on September 17, 1924, loaned to Grace F. Flesher, on behalf of the bank, the sum of $4000 and took her mortgage on certain real estate therein described securing said sum, evidenced by a note and interest or coupon notes, and on October 15, 1924, loaned to Samuel Peat the sum of $6700, and to secure the note for said amount, together with coupon interest notes, said Samuel Peat and Lelia, his wife, executed a mortgage to plaintiff in error on certain lands. Said notes and mortgages were the property of the John B. Colegrove and Company State Bank. These notes and mortgages were purchased by one Josiah Hall, a stockholder and large depositor in said bank, and together with other notes, mortgages and papers belonging to the said Hall were left by him with the bank for safekeeping, where they were kept in a file or box in what was designated as the "book vault" of the bank. Principal and interest on notes and mortgages belonging to Hall were paid at the bank and passed to his credit by deposit in his account and the coupons or notes were delivered to the makers. The officers and employees of said bank had access to this file and to the papers belonging to Hall.

The indictment consists of ten counts. The first, second, fifth and sixth counts charge that plaintiff in error on August 25, 1929, embezzled the Flesher mortgage and notes for $4000, and the ninth count charges larceny of said notes and mortgage. The third, fourth, seventh and eighth counts charge that plaintiff in error on the same date embezzled the Peat mortgage and notes for $6700, and the tenth count charges larceny of said Peat mortgage and notes.

On the trial the undisputed facts show that plaintiff in error, as president of the John B. Colegrove and Company State Bank, pledged the Flesher and Peat mortgages be-

longing at the time to Josiah Hall, to one C. H. Shamel in return for the delivery to plaintiff in error by Shamel of $10,000 of Imperial Japanese bonds and $1550 four and one-half per cent government bonds, which, according to the agreement of plaintiff in error with Shamel, were deposited with the State Treasurer as security for a State deposit of $10,000 in the Ridgely-Farmers State Bank of Springfield to the credit of the John B. Colegrove and Company State Bank. The Peat and Flesher securities were to be returned by Shamel when the State Treasurer withdrew the deposit of State funds and plaintiff in error returned Shamel's securities. The bank was closed on October 11, 1929, before the Shamel securities had been returned to plaintiff in error, as a result of which the Shamel securities were sold by the State and Shamel refused to return the Peat and Flesher securities. Hall, the owner of the mortgages described in the indictment, was vice-president of the John B. Colegrove and Company State Bank, a depositor therein to the amount of $200,000, and the owner and holder of 100 shares of the stock of said bank. At the time the mortgages in question were delivered to Shamel, plaintiff in error took certain mortgages belonging to the bank of which he was president, of the face value of $22,000, and placed them in the Hall file in lieu of the mortgages which he had pledged to Shamel. No entries were made on the books of the bank of the transfer of these mortgages taken from the bank and placed in the Hall file. On October 9, 1929, two days prior to the closing of the Colegrove bank, plaintiff in error, at St. Vincent's Hospital, at Taylorville, Illinois, where Hall was sick, made out a note on the bank, payable to Hall, and plaintiff in error returned it to the bank and placed same in the Hall file. This note does not appear to have been credited to Hall on the books of the bank. On October 11 the bank was closed, and W. R. Rodenberger, the State bank examiner, took charge of the bank. He, in checking up the assets of the bank, missed the mortgages of the

bank of the face value of $22,000 which plaintiff in error had put in Hall's file, and on being told by plaintiff in error that he had put them there, took them out of the Hall file and listed them as assets of the bank. He also learned from plaintiff in error who had the Peat and Flesher securities. The defense of plaintiff in error was; that he on August 30, 1929, visited Hall at the hospital and that the latter gave him permission to use the mortgages. No action was instituted against plaintiff in error during the lifetime of Hall, who died in December, 1929. Harold S. Williams, one of the executors of the last will and testament of Josiah Hall, requested plaintiff in error to obtain a return of the mortgages pledged to Shamel, and plaintiff in error interviewed Shamel, requesting him to return said mortgages, which he refused to do.

A motion for continuance was filed and denied. Plaintiff in error also filed a motion challenging the array, which was overruled. A motion was also filed seeking to deny the People the assistance of special counsel. This motion was likewise overruled. The jury returned a verdict finding plaintiff in error guilty of larceny in the manner and form as charged in the indictment, fixing the value of the property taken at $10,700 and the age of the defendant to be about sixty-five years. Motions for a new trial and in arrest of judgment were overruled.

The errors relied on for reversal are, (1) that the court improperly overruled the challenge to the array; (2) that the court improperly permitted a special prosecutor to take almost full and complete charge of the prosecution and to supplant the State's attorney; (3) that the court improperly overruled the motion for continuance; (4) errors in the admission and exclusion of evidence; (5) errors in instructions to the jury; and (6) sufficiency of the evidence.

In support of the challenge to the array, plaintiff in error placed on the stand L. E. Wilson, chief deputy county clerk and clerk of the board of supervisors, and offered a

resolution of the board of supervisors adopted on the 17th day of February, 1930, which resolution showed that a special meeting was held for the purpose of making a jury list of not less than ten per cent of the legal voters of each town or precinct of the county; that such list of names had been duly considered by said board and found to have all the legal qualifications prescribed by statute, and that it was resolved that said list of legal voters be designated as the jury list for said county. The supervisors' record showed a vote of twenty ayes and no nays, two supervisors being absent. Plaintiff in error also offered certain pages of the supervisors' record, which showed that at the February, 1930, meeting, the board of supervisors adopted a resolution selecting from such list, to serve as petit jurors, one hundred names for each trial term of courts of record in said county, exclusive of county court, and directing the county clerk to ticket said names and place same in the jury box, to be drawn therefrom in manner and form provided by law. This record also showed the adoption of this resolution, twenty supervisors voting aye, none voting nay, and two absent. It is shown by said witness that the board of supervisors had not made up a ten per cent jury list during the period between September, 1927, and February, 1930. The two lists provided by the resolutions of the county board were offered in evidence, and the witness testified that neither list had been copied into the minutes of the board of supervisors but they were on separate sheets of paper, which were attached to and kept on file as a part of the records of the board of supervisors.

Section 1 of chapter 78 (Smith's Stat. 1929, p. 1763,) provides: "The county board of each county shall, at or before the time of its meeting, in September, in each year, or at any time thereafter, when necessary for the purpose of this act, make a list of a sufficient number, not less than one-tenth of the legal voters of each town or precinct in the county, giving the place of residence of each name on

the list, to be known as a jury list." Section 2 provides, in part: "At the meeting of the county board, in the repective counties in this State, containing a population of not more than 250,000, in September, in the year 1874, and in each year thereafter, such board shall select from such list a number of persons equal to one hundred (100) for each trial term of the circuit and other courts of record, except county courts, which may be provided by law, to be held during the succeeding year, to serve as petit jurors." Section 3 provides: "If, for any reason, the list or the selection provided for in the foregoing sections of this act shall not be made at the meeting of the board held at the time specified, such list or selection shall be made at any meeting to be held as soon thereafter as may be."

It is the contention of plaintiff in error that as neither the ten per cent list nor the one hundred voters for each term of court was copied into the record and the sole reference in the record is a notation in parenthesis, "For jury list see supervisors' files," the jury lists were not properly made up and the challenge to the array should have been sustained. The statute does not expressly require that the lists be copied into the record. The record shows that both lists were made up, given to the county clerk and the jurors were drawn therefrom. The lists were parts of the records of the board by proper reference. Mere irregularities in failing to comply strictly with the statutory provisions, if not prejudicial, will not invalidate the list of jurors. (*People* v. *Cochran,* 313 Ill. 508; *People* v. *Boston,* 309 id. 77.) A verdict will not be set aside because a challenge to the array of jurors is overruled unless the record shows that substantial rights of the defendant were thereby impaired. (*People* v. *Stevens,* 335 Ill. 415; *People* v. *Corder,* 306 id. 264; *Siebert* v. *People,* 143 id. 571.) There is nothing in the record showing prejudice to plaintiff in error in the preparation of the jury lists, and the challenge to the array was properly overruled.

Plaintiff in error next insists that his motion that the assistance of a special prosecutor be not permitted should have been sustained. In support of said motion plaintiff in error offered evidence that Lott Herrick, who had been selected to assist the State's attorney, was not a resident of Christian county but of the county of DeWitt and that he was not an assistant Attorney General of the State of Illinois. It was shown by the supervisors' records that the county board of Christian county authorized the State's attorney to employ an assistant in connection with the Colegrove Bank failure and that compensation for his services was authorized. The power of the court to permit special counsel to assist the State's attorney in prosecution of criminal cases has been frequently sustained by this court. (*People* v. *Stark,* 324 Ill. 289; *People* v. *Hartenbower,* 283 id. 591.) Plaintiff in error was represented by able and experienced counsel. There is no evidence of oppression of plaintiff in error and no unfairness or inequality in the trial in this regard appears in the record. The court did not err in denying this motion. *People* v. *Harrison,* 261 Ill. 517.

Plaintiff in error next urges that his motion for continuance should have been allowed. It is a sufficient answer to say that the record shows that the question was not raised on motion for new trial filed by plaintiff in error. Errors claimed to have occurred in the trial and relied on for reversal must first be called to the attention of the trial court by a motion for a new trial and an opportunity given that court to correct the same. *Herder* v. *People,* 209 Ill. 50; *Illinois Central Railroad Co.* v. *Johnson,* 191 id. 594.

Plaintiff in error next contends that the court admitted improper evidence on behalf of the People. On direct examination of the witness Harold S. Williams he was permitted, over objection of plaintiff in error, to testify concerning conversations had with Josiah Hall, the owner of the Peat and Flesher securities, and directions he received

from Hall, which conversations were not in the presence of plaintiff in error. After testifying that he had checked with Hall the list of his securities in the possession of the bank and found the Peat and Flesher mortgages were not in the box or file in the bank with Hall's other securities, he was asked the following question: "Did you receive any instructions from Mr. Hall with reference to the Peat mortgage and note and the Flesher note and mortgage?" Plaintiff in error's objection was overruled and the witness answered, "Yes." He was then permitted, over objection of plaintiff in error, to answer the following question: "You may state whether or not he instructed you to take steps to recover those mortgages and notes," to which he answered, over objection, "Yes." The witness Homer Brents was asked the following question: "You may state if you were present on any occasion when Mr. Hall gave any directions to Mr. Harold Williams, attorney of this city, with reference to the recovery of the Peat note and mortgage and the Flesher note and mortgage?" To this question plaintiff in error objected. Over his objection the witness answered, "Yes, I was." Question: "I cannot go into the conversation, but you may state whether or not Mr. Hall on that occasion directed Mr. Williams to recover for him, Mr. Hall, the Peat note and mortgage and the Flesher note and mortgage." Objection by plaintiff in error was overruled and witness answered, "He did." Question: "Now, about when was it that these instructions were given to Mr. Williams?" Objection by plaintiff in error overruled. Answer, "In the latter part of October, 1929." Motion by plaintiff in error to exclude this testimony of Williams and Brents was denied. It is not claimed that plaintiff in error was present at such conversations. The evidence was hearsay and not admissible. Declarations out of court or statements of any kind by a third person against the accused, made in his absence and without his knowledge, are inadmissible as evidence against him. The rule is elementary

and a violation of it is a violation of the constitutional right of the accused that he shall not only be informed of the nature of the charge against him but be permitted to meet the accusing witness face to face. (*People* v. *Schallman,* 273 Ill. 564.) The defense was that the notes and mortgages were taken with the knowledge and consent of the owner, Hall. Hall died prior to the trial, and the admission of that evidence had the effect of admitting the testimony of a dead man. In the argument to the jury the State's attorney stated that "legal proceedings were under headway to get these mortgages back." Plaintiff in error's objection to this argument was overruled. This statement was improper and not supported by competent evidence and it was error to overrule said objection.

The entire defense of plaintiff in error was based on a claim that consent was given by Josiah Hall to the use of these notes and mortgages for the purpose for which they were used, which was to borrow money for the benefit of the bank. It was shown in the record that Hall was vice-president of and a large stockholder and heavy depositor in the bank, and it must be conceded that he was much interested in the continuance of the bank. Plaintiff in error testified that he visited Hall at a hospital in Taylorville where the latter was receiving treatment and procured his consent to use these securities. The testimony of Williams and Brents was hearsay on the vital point of plaintiff in error's defense. While they were asked concerning their instructions from Josiah Hall as to the recovery of these securities, rather than to repeat the conversation, the questions put and their answers thereto, were in effect the same as though they had repeated the conversation between the witness Williams and Hall. This testimony, directly contradicted by this hearsay evidence, is the sole defense of the plaintiff in error. The prejudice of this testimony was increased by the statement in argument of counsel for the People that steps had been taken to recover these securities

for Hall. No dispute appears in the record as to the use of the securities or the purpose for which they were used. It does not appear in the record that they were used for plaintiff in error's personal benefit but for the benefit of the bank. Therefore the controlling question in the case was whether he had the consent of Josiah Hall to use them. If he had, he was not guilty of larceny. This error was highly prejudicial and requires a re-trial of the cause.

Plaintiff in error also argues that proper evidence offered by him was denied admission by the court and that the court repeatedly sustained objections to testimony afterwards admitted, which rulings had the effect of largely destroying the force of the testimony when admitted. A citizen charged with crime should be allowed to make all proper defense, and if the evidence offered is competent it should be permitted to go to the jury for all it is worth. The exclusion of evidence of which plaintiff in error principally complains concerns his attempt to prove by his own testimony and that of others in the bank, certain conversations he had with them just before he left to visit Josiah Hall at the hospital. These statements made by him at that time could amount to nothing more than self-serving declarations and were rightly kept from the record.

Numerous errors are assigned in the giving and refusing of instructions. We have examined them all. Some relate to instructions given in the language of the statute concerning embezzlement and larceny. The various counts of the indictment covered both of these charges and such instructions were not improper. People's instruction 22a is complained of as erroneous. That instruction told the jury, as a matter of law, that when one feloniously and intentionally takes the personal property of another then being in the owner's possession the offense of larceny is complete, and the fact that the person taking such property may at the same time intend to subsequently return the same to its rightful owner does not relieve his unlaw-

ful act of its criminal nature or excuse him or make his offense any the less larceny. It is argued that this instruction ignored plaintiff in error's defense that the taking of the securities was with the knowledge and consent of the owner. Other instructions covered the necessity for proof that the taking was without the knowledge and consent of the owner. This instruction was based on the rule of law concerning a felonious, unlawful and intentional taking of the property of another. While it ignores plaintiff in error's defense it states a rule of law for the guidance of the jury and does not direct a verdict. It was not error.

The ninth instruction given on behalf of the People is as follows:

"The fact that a banker may have authority to collect mortgage notes both as to principal and interest, belonging to a customer of his bank, and surrender interest and principal notes when paid, to the maker thereof, does not give such banker any right, power or authority to sell, negotiate, trade, exchange or pledge any notes belonging to such customer."

The objection to this instruction is that the evidence shows that for more than twenty-five years plaintiff in error had been the confidential financial guide of Josiah Hall; that he made his loans, collected the interest thereon, renewed them, sold, exchanged and had the custody of them. This instruction was misleading in that it placed before the jury only a part of the facts relating to plaintiff in error's relationship with Josiah Hall. This instruction could refer only to that relationship. It is the rule that the legal propositions submitted to the jury must be consistent with and founded upon the facts in the case. (*People* v. *Davis,* 269 Ill. 256; *Hayner* v. *People,* 213 id. 142.) This instruction is objectionable in that it instructs the jury on the evidence piecemeal and tended to mislead them when applied to the facts of this case. It should not have been given.

442

Other objections as to instructions of the People given and those of plaintiff in error refused have been considered, but we are of the opinion they are not open to the objections urged.

For the error in receiving the incompetent testimony herein referred to, the judgment of the circuit court of Christian county is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*