(No. 34611.—

THE PEOPLE OF THE STATE OF ILLINOIS *vs.* RICHARD DANIEL CARPENTER.—(IRENE CARPENTER, Appellant, *vs.* THE PEOPLE OF THE STATE OF ILLINOIS, Appellee.)

*Opinion filed March 20, 1958—Rehearing denied May 23, 1958.*

Daniel C. Ahern, and Kevin J. Gillogly, both of Chicago, for appellant.

Latham Castle, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago,

(Fred G. Leach, William H. South, Francis X. Riley, and John T. Gallagher, of counsel,) for the People.

Mr. Justice Bristow delivered the opinion of the court:

A jury in the criminal court of Cook County found Richard Carpenter guilty of the crime of murder and assessed the death penalty. We affirmed the judgment of conviction which was entered on the jury's verdict. (*People v. Carpenter,* 11 Ill.2d 60.) Following our denial of a petition for rehearing Irene Carpenter, a sister of Richard Carpenter, filed a petition in the trial court alleging that Carpenter had become insane since the judgment and sentence. The court stayed Carpenter's execution and a jury was impaneled to determine the issue of Carpenter's sanity. A hearing was held on this issue and the jury returned a verdict finding that Carpenter was sane. Irene Carpenter has appealed to this court from the verdict and judgment finding Carpenter sane.

The petition which was filed by Irene Carpenter alleged that Carpenter had become insane since the judgment of conviction and the sentence of death and that he was insane at the time of the filing of the petition. The petition prayed for an order directing the warden of the Cook County jail to permit Carpenter's physician to examine him, and following this the State's Attorney moved for an order to permit a physician chosen by the State to examine Carpenter. Both motions were allowed, the State's motion being allowed over the objections of Irene Carpenter. The State's Attorney later moved for an order permitting two additional physicians to examine Carpenter, which motion was allowed over petitioner's objections. Prior to trial the State's Attorney, in his *voir dire* examination, inquired of each juror as to whether he had religious or conscientious scruples against the death verdict. Petitioner objected to these inquiries but the objection was overruled. One juror

was challenged for cause on this ground and the State exercised two of its five peremptory challenges on other grounds. Petitioner did not exercise any of her peremptory challenges. The case proceeded to trial and petitioner called the following witnesses: herself, the assistant warden of the county jail, the captain of the guard of the county jail, the Protestant chaplain of the county jail and the doctor who had examined Carpenter at petitioner's request. The State called the following witnesses: a sergeant of the guard of the county jail, three guards of the county jail, and three physicians who had examined Carpenter at the State's request. At the trial petitioner objected to the testimony of the three medical witnesses who testified for the State but the court overruled her objection. The jury returned a verdict finding that Carpenter was sane. A post-trial motion filed in the trial court assigned as error the fact that the trial judge permitted the State to inquire into the religious and conscientious scruples of the prospective jurors and also that the court erred in ordering the warden of the county jail to permit three psychiatrists to examine Carpenter in behalf of the State over petitioner's objections. It was alleged in that motion that these errors were in violation of the provisions of the Illinois and United States constitutions that no person should be deprived of his life without due process of law. The same errors are assigned on the present appeal.

At the outset we are confronted with a question of whether we have jurisdiction on this appeal. The proceedings in the trial court were commenced and proceeded in accordance with the provisions of section 13 of division II of the Criminal Code, (Ill. Rev. Stat. 1955, chap. 38, par. 593,) which provides as follows: "A person that becomes lunatic or insane after the commission of a crime or misdemeanor shall not be tried for the offense during the continuance of the lunacy or insanity. If, after the verdict of guilty, and before judgment pronounced, such

person become lunatic or insane, then no judgment shall be given while such lunacy or insanity shall continue. And if, after judgment and before execution of the sentence, such person become lunatic or insane, then in case the punishment be capital, the execution thereof shall be stayed until the recovery of said person from the insanity or lunacy. In all of these cases, it shall be the duty of the court to impanel a jury to try the question whether the accused be, at the time of impaneling, insane or lunatic."

There is no statutory provision for an appeal from the jury's verdict in such a proceeding, and in the absence of such a provision an appeal normally would not lie, either to this court or to the Appellate Court. However, in *People v. Scott,* 326 Ill. 327, and *People v. Kadens,* 399 Ill. 394, both involving post-sentence insanity hearings, we held that where personal liberties are involved a writ of error lies by force of the common law, in the absence of statute. In those cases we reviewed the proceedings in the trial court to determine whether the defendants had received a fair trial in accordance with the law of the land and held that they had not received such a trial and had consequently been deprived of due process of law. In the instant case we are of the opinion that the assignments of error present fairly debatable constitutional questions and that we, therefore, have jurisdiction. What was said in the *Scott* and *Kadens cases* with respect to a writ of error applies with equal force to our jurisdiction by way of appeal.

We consider first the contention that petitioner and Carpenter were deprived of due process of law by reason of the fact that the trial judge permitted the State's Attorney to inquire as to the religious or conscientious scruples of the prospective jurors concerning the death sentence.

It is argued that the effect of such inquiry was to direct the jury's attention to the punishment which Car-

penter was to suffer, rather than to the matter of his insanity, which was the sole issue to be determined by the jury, and it is further urged that the necessary effect of the inquiry was to deprive petitioner and Carpenter of a fair and impartial jury, thus depriving them of due process of law. In passing upon this contention, it becomes pertinent to consider the scope of inquiry permitted generally in a *voir dire* examination. The scope of such inquiry is ordinarily left to the sound discretion of the trial court and reasonable inquiry should be permitted into the matter under investigation. (*People* v. *Moretti,* 6 Ill.2d 494.) Counsel should be permitted to make any reasonable and pertinent search to ascertain whether the minds of the jurors are free from bias and prejudice. (*People* v. *Murawski,* 2 Ill.2d 143.) It remains to be determined whether inquiry as to the scruples of the prospective jurors concerning the death penalty is reasonable and pertinent in this case. Such inquiry is proper in the original trial of a capital case (*People* v. *Winchester,* 352 Ill. 237) and it is provided by statute that in the trial of a capital case it shall be cause for challenge of a juror that he has conscientious scruples against the death penalty. (Ill. Rev. Stat. 1955, chap. 38, par. 743.) The present proceeding is a civil case and therefore this statute is not directly applicable. However, for the same reasons that a juror's scruples against the death penalty are grounds for a challenge for cause in the trial of a capital case, such scruples are grounds for challenge here. In a post-sentence sanity hearing the test of insanity is whether the prisoner has sufficient intelligence to understand the nature of the proceedings against him, what he was tried for originally, the purpose of his punishment, the impending fate which awaits him, a sufficient mind to know any facts which might exist which make his punishment unjust or unlawful, and sufficient intelligence to convey such information to his attorney or the court. (*People* v. *Geary,* 298 Ill.

236.) It follows that since this was the issue before the jury they must necessarily have known that Carpenter had been sentenced to death and that the purpose of the hearing was to determine whether he should be executed. Certainly in the present case as well as in an original trial in a capital case the mental attitude of a prospective juror with respect to capital punishment is relevant and material for the same reason applied in such an original trial. In the trial of the case where capital punishment may be inflicted a juror who has religious or conscientious scruples against capital punishment might hesitate to return a verdict inflicting such punishment, and in the present proceedings a juror having such scruples might likewise hesitate in returning a verdict finding Carpenter sane, which in effect confirms the death sentence. We find no violation of due process of law in the fact that the jurors were questioned with respect to their scruples against the death penalty.

This leaves for consideration the contention that the court erred in ordering the warden of the jail to permit three psychiatrists chosen by the State to examine Carpenter and in later permitting their testimony at the hearing. This assignment of error is based upon two contentions. First it is argued that Carpenter had an absolute right to the inviolability of his person and that the State had no right to compel any examination of him over his objections. This argument is based in large part upon *People* v. *Scott,* 326 Ill. 327, where it was held to be error to permit the State's Attorney to comment on the defendant's refusal to submit to an examination. Petitioner also relies upon *Union Pacific Railroad Co.* v. *Botsford,* 141 U.S. 250, a personal injury case. However, since these decisions this court in *People ex rel. Noren* v. *Dempsey,* 10 Ill.2d 288, has held that the privilege against the invasion of personal privacy or the examination of one's person is not applicable where one, by his own act, puts

in issue his physical or mental condition. In that case we reviewed the authorities from other jurisdictions and found that in none of the cases which had refused such an examination was there a satisfactory explanation of the refusal. We cited the *Scott case* and overruled it and all other cases which had asserted a lack of power to compel a physical examination. Since the decision in the *Botsford case,* the Supreme Court has promulgated Rules of Civil Procedure for United States District Courts, and Rule 35 of those rules specifically authorizes physical or mental examination of a party when his physical or mental condition is in controversy. (Fed. Rules Civ. Proc. rule 35, 28 U.S.C.A.) This rule has been held valid and it has been held that the decision in *Botsford* was based solely upon a lack of authority by statute or rule. (*Sibbach* v. *Wilson & Co.* 312 U.S. 1, 61 S. Ct. 422.) It is therefore quite clear that nothing said in *Botsford* supports the argument that it is a violation of due process of law to compel a mental examination. In the present case Irene Carpenter by her petition placed in issue the mental condition of Richard Carpenter. His mental condition, therefore, became a fact to be proved in the case and an examination by the State was therefore proper. We find that the order directing the warden to permit Carpenter to be examined by a State psychiatrist did not violate Carpenter's privilege of privacy and did not deprive him or petitioner of due process of law.

As an alternative argument petitioner assumes, *arguendo,* that it was permissible under *People ex rel. Noren* v. *Dempsey* to permit one State psychiatrist to examine Carpenter and testify at the trial but that it was unfair to permit two additional psychiatrists to examine him over his objections and to permit their testimony. It is contended that these additional examinations were not for the purpose of discovery, since discovery as to Carpenter's mental condition was had by the first examination and,

therefore, *People ex rel. Noren* v. *Dempsey,* which permitted physical examination for discovery purposes, does not authorize the additional examinations. Petitioner and Carpenter were both persons of limited financial means and were unable to retain more than one psychiatrist. It is argued that the State, with practically unlimited financial resources, was thus able to overwhelm petitioner's expert testimony and that it was manifestly unfair that Carpenter should be placed in the position of having to furnish the basis for this expert testimony against his will. It must be conceded that the additional examinations were for the purpose of obtaining evidence and not for discovery and that the ruling of the trial court permitting these examinations and subsequent testimony cannot be upheld on the basis that they were necessary for discovery. To so hold does not, however, mean that these rulings deprived Carpenter of due process of law. It must be kept in mind that on this appeal we are not concerned with the weight or sufficiency of the evidence nor with any procedural errors which may have occurred at the trial. Our concern is only that Carpenter was afforded a fair hearing and one which complied with the requirements of due process of law. It is pertinent in this connection to consider the decisions from other jurisdictions in similar cases. In *Nobles* v. *Georgia,* 168 U.S. 398, 18 S. Ct. 87, the United States Supreme Court considered the validity of a Georgia statute which provided in substance that the question of the insanity of a person who had been sentenced to death should be determined by a jury of twelve men summoned by the sheriff with no provision for a regular jury trial in a court of record. The statute further provided that if the sheriff's jury found the prisoner insane the presiding judge had the power to issue a new warrant directing the execution of the prisoner whenever it appeared to the judge by inquisition or otherwise that the prisoner was sane. The court held that due

process of law did not require a jury trial in a judicial proceeding and that a prisoner whose sanity was in question was not entitled to all the safeguards and requirements of a common-law jury trial. In so holding the Supreme Court referred to the ancient common law as set forth by Blackstone in his Commentaries to the effect that if a prisoner appears to be insane after conviction and before the execution of the sentence the procedure to be followed would be left in the discretion of the judge, and also cited *Laros* v. *Commonwealth,* 84 Pa. 200, where it was held that a right to trial by jury to determine the question of sanity after conviction was inconsistent with the due administration of justice.

In *Solesbee* v. *Balkcom,* 339 U.S. 9, 70 S. Ct. 457, the court again had under consideration the question of the validity of the procedure established by the State of Georgia for determining the question of a prisoner's insanity after conviction and prior to execution. The statute at that time provided that if satisfactory evidence was offered to the Governor of the State that the prisoner had become insane, the Governor might, in his discretion, have the prisoner examined by such expert physicians as the Governor might choose, which physicians should report to the Governor the result of their investigation. The statute made no provision for any judicial determination of the question of insanity and it did not give the prisoner the right to present evidence or to cross-examine the physicians appointed by the Governor. The court held that postponement of execution because of insanity was analogous to the right to reprieve and was not similar to a trial for crime. It was held that it did not offend due process for Georgia to constitute its Governor an apt tribunal to pass upon the question of the prisoner's sanity, especially where the Governor had the aid of physicians specifically trained in the field. It was conceded that the Governor and the physicians might make errors of judg-

480

ment and that even judicial determinations of sanity might be wrong, but nevertheless, in spite of the possibility of error which was present in every case, it was held that the procedure adopted by the State of Georgia did not offend due process of law.

In an annotation commencing at 32 A.L.R. 2d 437, the cases are collected dealing with the right of a court to appoint medical examiners to determine the question of insanity at the time of trial. While these authorities are not squarely in point for they deal with the question of the rights of the prisoner prior to or during trial and the present case involves the rights of the prisoner after sentence and before execution, the cases are persuasive, for it is well settled that the safeguards applicable to an original trial are not necessarily applicable to post-conviction determinations of insanity. (*Nobles* v. *State of Georgia,* 168 U.S. 398, 18 S. Ct. 87; *Solesbee* v. *Balkcom,* 339 U.S. 9, 70 S. Ct. 457.) In the annotation cases are cited from many jurisdictions holding that the appointment of physicians to examine a defendant who puts in issue the question of his sanity does not violate the prisoner's privilege against self incrimination, his right to a jury trial, nor his right to due process of law.

In the present case Carpenter placed in direct issue the question of his present insanity. In the absence of the statute this question could have been resolved in many ways short of a jury trial without offending due process of law. However, because of the statute he was entitled to and did receive a jury trial. The only question before us is whether his trial was so unfair as to violate our concepts of fundamental fairness so as to be a violation of due process of law. Petitioner's arguments that permitting the State to have three psychiatrists examine Carpenter was so unfair as to amount to a violation of due process of law necessarily proceeds upon the assumption that the psychiatrists employed by the State were biased

and prejudiced and that their testimony was not an honest evaluation of their examination, for certainly it cannot offend due process of law for one who puts in issue the question of his insanity to have the benefit of all of the expert evidence obtainable. As the United States Supreme Court stated in *Solesbee* v. *Balkcom,* 339 U.S. 9, 70 S. Ct. 457: "We would suppose that most if not all governors, like most if not all judges, would welcome any information which might be suggested in cases where human lives depend upon their decision." The court and the jury in the present case were likewise entitled to the benefit of all of the evidence that was obtainable. There is nothing whatsoever in the record before us to indicate in any manner that the psychiatrists who testified for the State did other than give their honest and unprejudiced opinion based upon their special knowledge and their examination of Carpenter. We find no violation of any of Carpenter's constitutional rights by reason of this examination and testimony.

The record before us discloses that petitioner and Carpenter received a fair and impartial hearing in accordance with the statute and the constitutions of the State of Illinois and the United States. The judgment of the trial court is affirmed and the clerk of this court is directed to enter an order fixing the 6th day of June, A.D. 1958, as the date of Carpenter's execution.

*Judgment affirmed.*