(No. 39829.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
LARRY WATSON, Appellant.

*Opinion filed December 1, 1966.*

House, J., specially concurring.
Underwood, J., concurring in part and dissenting in part.

David R. Nissen, of Rockford, appointed by the court, for appellant.

William G. Clark, Attorney General, of Springfield, and William R. Nash, State's Attorney, of Rockford, (Fred G. Leach, Assistant Attorney General, and Philip G. Reinhard, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Solfisburg delivered the opinion of the court:

The defendant was indicted in Winnebago County for attempt to commit the offense of forgery. A jury trial resulted in a guilty verdict and the defendant was sentenced to a term of one to five years in the penitentiary. He has appealed directly to this court on the grounds that a question has arisen under the sixth and fourteenth amendments to the United States constitution and under section 9 of article II of the constitution of Illinois. Specifically defendant, an indigent, contends that the trial judge's refusal to

provide him with funds with which to obtain the services of a questioned document examiner deprived the defendant of due process in that he was not allowed to call witnesses in his favor. Along with the constitutional issue, defendant alleges several other grounds for reversal, the most important of these being the court's refusal to allow defendant to offer evidence that a check similar to that which the defendant was accused of attempting to forge was forged and cashed after he was in custody.

In August, 1965, Stanwood Trein purchased some $50 worth of American Express traveler's checks. Later, on the day of the purchase, Trein picked up a stranger in his automobile and gave him a ride from Rockford to Dixon, Illinois. When Trein arrived home, he noticed that $30 or $40 of the traveler's checks were missing. Some days thereafter a person entered a Rockford tavern and asked the bartender to cash a ten-dollar traveler's check. The person presenting the check signed it in the bartender's presence, but since the name signed was not the same as that on the top of the check, the bartender called the manager who inquired about the disparity of signatures. After a short conversation, the person attempting to cash the check left the tavern, leaving the check behind. The manager then called the police.

The following day two police officers brought the defendant to the Rockford tavern and at that time both the bartender and the manager identified the defendant as the person who had tried to cash the check the day before. During the trial, the defendant was also identified as the person who had ridden in the Trein car from Rockford to Dixon and the check was identified as one of those purchased by Trein.

Prior to trial the defendant, through his court-appointed attorney, filed a motion requesting the court to provide him with funds, because of his indigency, in order to obtain the services of a questioned document examiner. Attached to

the motion was an affidavit of defense counsel stating, in substance, that the charge was attempted forgery of an American Express traveler's check, that the State would produce a witness who will testify that the check was signed by the defendant in his presence, that the State has not obtained the opinion of an expert as to whether defendant signed the check or whether his fingerprints appear thereon, that an examination of the check by a qualified expert will show that defendant did not sign it and that his fingerprints do not appear thereon, and that in his opinion the testimony of such an expert is essential to provide defendant with an adequate defense and to establish his innocence. The State contended, in urging the motion be denied, that since the charge against the defendant was attempt to commit forgery by delivery of a forged check, the handwriting of the defendant was not in issue. Furthermore, the State contended that the motion should be denied since there is no statutory authority for appointment of expert witnesses in noncapital cases. After arguments, the court denied the motion.

During the course of the trial defense counsel requested the court to order the prosecution to produce a check which the defense believed was also one of Trein's and which was signed and cashed after defendant was in custody. The court refused to order the production of the other check on the ground that it was irrelevant and immaterial to the question of defendant's guilt with regard to the check presented in the Rockford tavern.

At the outset, it is the opinion of this court that defendant should not have been precluded from offering evidence to prove that a similar traveler's check was forged and cashed after the defendant was in custody. Although the indictment charges defendant with attempt to commit forgery by delivery of a forged check, the prosecution's own witness testified that defendant signed the check in the presence of the bartender. If then, the signature on a check cashed

subsequent to defendant's being placed in custody, was the same as that on the check defendant is accused of attempting to deliver, the jury could infer that defendant could not have signed or attempted to deliver either one. In making his offer of proof defense counsel indicated that he could summon witnesses to testify that this other check was signed in the presence of a drug store employee. Surely the signatures on both checks deserve comparison, for if they were both signed by the same person, defendant might have a complete defense. Even though he is not charged with signing the check, the facts of the case point out that if he did not sign it, he did not deliver it. A person charged with a crime should be allowed to make all proper defense and if the evidence offered is competent, it should be permitted to go to the jury for all it is worth. (*People* v. *Colegrove,* 342 Ill. 430.) Since the question of whether defendant did sign the check at the Rockford tavern is crucial to his defense, the trial court should have allowed the admission of evidence showing that another of Trein's checks was cashed at a later date. The jury could have reached another verdict had the evidence been allowed and therefore we conclude that its rejection constituted reversible error. *People* v. *Wolff,* 19 Ill.2d 318.

Because of our ruling on the admission of evidence relating to the other check, it is necessary to turn to the constitutional issue raised by the defendant. It is foreseeable that an expert witness will be necessary to compare the signatures on the two checks and therefore we must determine whether or not defendant, as an indigent, can look to the court for the funds with which to hire a questioned document examiner.

It has long been a major goal of our entire judicial system to see that all persons charged with a crime "stand on an equality before the bar of justice in every American court." (*Chambers* v. *Florida,* 309 U.S. 227, 241, 84 L. Ed. 716, 724.) Such cases as *Gideon* v. *Wainwright,* 372 U.S.

335, 9 L. Ed. 2d 799, 83 S. Ct. 792, and *Griffin* v. *Illinois,* 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585, have gone far to achieve this goal by assuring indigent defendants, even in noncapital cases, the right to counsel and to appellate review. The problem now facing the court concerns the production of witnesses on behalf of indigents. The Illinois constitution provides, in section 9 of article II, that in criminal prosecutions the accused is entitled to have process to compel the attendance of witnesses in his behalf. In almost identical language the sixth amendment to the United States constitution provides that the accused in criminal cases is entitled to have compulsory process for obtaining witnesses in his favor. Thus it is at once apparent that the right to summon witnesses is fundamental to our legal system. It is defendant's contention that a right so fundamental should not be made to depend upon the financial circumstances of the defendant. We share this view.

The court recognizes that there is a distinction between the right to call witnesses and the right to have these witnesses paid for by the government, but in certain instances involving indigents, the lack of funds with which to pay for the witness will often preclude him from calling that witness and occasionally prevent him from offering a defense. Thus, although the defendant is afforded the shadow of the right to call witnesses, he is deprived of the substance.

The value of an expert witness's testimony lies in his experience and, more particularly, in his preparation. Although a *subpoena* would suffice to compel his appearance at trial, this appearance by itself would be of no value unless he had been able to make findings upon which to base his testimony. It is the cost of making these preparatory findings which the defendant feels should be borne by the government.

Indeed, the State legislature has taken a similar view but only in certain instances, the most pertinent of these being in capital cases where the court is allowed to order the

county treasurer to pay a reasonable fee, not to exceed $250 for each defendant for expert witnesses in support of the accused. (Ill. Rev. Stat. 1965, chap. 38, par. 113—3(e).) While we commend this legislative policy, we are of the opinion that in certain instances this policy should be extended to noncapital felonies. The constitutional provisions for compelling the attendance of witnesses make no distinction between capital and noncapital cases and neither should the safeguards for a fair trial.

Whether it is necessary to subpoena expert witnesses in order to assure a fair trial will depend upon the facts in each case. There are instances in noncapital cases where an expert might be necessary to establish a defense. Here a handwriting expert could give a professional opinion as to whether the defendant signed the check he is accused of attempting to deliver, and could compare the signature on that check with the signature on the check which was signed and delivered while defendant was in custody. If it is his opinion that defendant could not have signed it, then the jury could be permitted to draw the conclusion that defendant is innocent. Despite the language of the indictment, the issue of handwriting goes to the heart of the defense. The opinion of a handwriting expert in this case then may have been crucial, and defendant's lack of funds prevented him from presenting to the jury evidence which may have established his innocence. We hold that under the facts presented in this case defendant was entitled to a reasonable fee for the purposes of hiring a questioned document examiner. Recognizing that the payment of expert witness fees is an appropriate subject for the legislature, as is the payment of legal costs and fees, (see *People ex rel. Conn* v. *Randolph,* 35 Ill.2d 24,) we trust the General Assembly will consider the expansion of section 113—3(e) to include noncapital cases where expert testimony is deemed by the trial judge to be crucial to a proper defense. Such a step has been taken by the California legislature, (Cal. C.C.P.A., sec.

1871,) and appears to have met with satisfactory results. In view of our decision regarding the admissibility of the subsequently presented check and the defendant's right to an expert witness, this cause must be remanded for a new trial.

We shall briefly consider some of the other points raised by the defendant since they relate to matters which foreseeably might arise at the new trial. He first contends that the indictment charging him with attempt fails to charge an offense since "failure" was not alleged. Section 8—4 of Criminal Code of 1961 clearly points out that all that need be shown in a charge of attempt is the intent to commit a specific offense and an overt act constituting a substantial step toward commission of the crime. (*People* v. *Richardson,* 32 Ill.2d 497, 502.) As the committee comments to the statutory provision point out, it is no longer the law in Illinois that the attempt must fail.

The defendant contends that the indictment misnames him and that substantial injustice resulted therefrom. Although the defendant was named in the indictment as "Larry Watson" he asserts that his true name is Donald McCain. We are unable to ascertain from the record just how this mix-up in names occurred but we note that the indictment was returned and the defendant arraigned, and a pretrial motion to dismiss on the grounds that the indictment failed to allege an offense was filed and denied before the defendant's "true name" was revealed in his motion requesting the court to order funds enabling him to hire an expert witness.

Despite the fact that this motion for funds revealed defendant's true name, it was not until four days later that defense counsel renewed his motion to dismiss the indictment on the additional ground that the defendant was misnamed. This motion was likewise denied.

We note that throughout the presentation of the State's case the defendant was referred to as "Larry Watson"

without objection. It was not until the defense presented its sole witness that defendant's true name was disclosed to the jury on direct examination. After the trial defendant filed a motion for a new trial and a motion for arrest of judgment, neither of which mentioned or challenged the misnomer. Both of these motions were denied.

It is our conclusion that the misnaming resulted in no substantial injustice to the defendant. Moreover, since both names do appear in the record, defendant could not be subject to double jeopardy. For the sake of clarity, however, we trust that future reference to the defendant will indicate his true name.

Another contention of the defendant is that the court erred in allowing a police officer to testify that a witness had identified the defendant as the person who signed and presented the check in defendant's presence. The police officers further testified that defendant remained silent. Although ordinarily conversation in the presence of defendant is hearsay and inadmissible, there is a recognized exception in cases where a defendant stands mute in the face of an accusation. When, as here, an incriminating statement is made in the presence and hearing of the accused, and such statement is neither denied nor objected to, both the statement and the fact of his failure to deny are admissible as evidence of the truth of the accusation. (*People* v. *Norman,* 28 Ill.2d 77; *People* v. *Braverman,* 340 Ill. 525.) We make note of the fact that defendant was sentenced prior to the effective date of *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, as determined in *Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882.

The defendant also contends that the court erred in failing to order the production of a police report made from notes which a police officer made while interviewing one of the identifying witnesses. Defendant contended that this was a "statement" made by the witness and, relying on our decision in *People* v. *Wolff,* 19 Ill.2d 318, *cert.* den. 364

U.S. 874, 5 L. Ed. 2d 96, requested that the police report be turned over to him. In the *Wolff* case we announced our adherence to the Federal rule as stated in *Palermo* v. *United States,* 360 U.S. 343, 3 L. Ed. 2d 1287. (Codified in Title 18, U.S.C., sec. 3500.) A review of this rule will point out that the term "statement" includes "a stenographic * * * recording * * * or a transcript thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the government and recorded contemporaneously with the making of such oral statement." (Title 18, U.S.C., sec. 3500, subsection e.) In this case the police officer testified that his notes contained exactly what the witness told him and that the report was made up from the notes. Such being the case, the report contained a "statement" to which the defendant was entitled. Although defendant was supplied a copy of the report before the close of the trial, he was entitled to have it during the testimony of the witness from whom it was taken. The error was harmless in view of defendant's later obtaining the report, but it was nevertheless error.

The court has examined the other points raised by the defendant, and finds them to be without merit.

The judgment of the trial court is reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion.

*Reversed and remanded.*

Mr. JUSTICE HOUSE, specially concurring.

I concur with the holding that defendant under the circumstances of this case was entitled to have an expert witness examine the questioned document, but I do believe that the majority has gone too far when it apparently equates the legislative pronouncement in section 113—3(e) of the Code of Criminal Procedure, (Ill. Rev. Stat. 1965, chap. 38, par. 113—3(e),) with the requirements of due process. I feel that the defendant in this case had the right to have the

check examined by handwriting and fingerprint experts, but I do not think he is "entitled to a reasonable fee for the purposes of hiring a questioned-document examiner".

Section 113—3(e) provides, "In capital cases, in addition to counsel, if the court determines that the defendant is indigent the court may, upon the filing with the court of a verified statement of services rendered, order the county treasurer of the county of trial to pay necessary expert witnesses for defendant reasonable compensation stated in the order not to exceed $250 for each defendant." The legislature has seen fit to limit this provision to capital cases. To expand the philosophy and force of this section to cover this case is to legislate by judicial metaphysics.

We have held on several occasions that the refusal to furnish an indigent defendant with an expert witness or witnesses in addition to those already produced by the People on the same issue does not constitute a denial of due process in the absence of a showing that the People's expert witness or witnesses gave other than their honest and unprejudiced opinion based upon their special knowledge and examination. *People* v. *Carpenter,* 13 Ill.2d 470 (psychiatrist) ; *People* v. *Myers,* 35 Ill.2d 311 (psychiatrist) ; *People* v. *Nash, post* 275 (ballistics).

In this case the People produced no expert testimony as to whether defendant signed the check or whether his fingerprints appeared on it. Under the facts of this case, we have decided that there is a reasonable doubt of defendant's guilt and that such opinion evidence is necessary in order to convict defendant. It seems to me our opinion should go no further than this. To hold that defendant should hire a questioned-document examiner is in effect asking him to prove himself innocent. If the People do produce such testimony, then the rulings in *Carpenter, Myers* and *Nash* become operative.

For still another reason, I think that the majority opinions has gone beyond the requirements of due process of

law. It holds that the indigent defendant should be provided with funds to hire a questioned-document examiner. This is in sharp contrast with the constitutional provision guaranteeing the right to counsel, which has never been construed to mean that funds should be paid to an indigent defendant with which to pay counsel of his choice. The legislature in section 113—3(b) has provided that the trial court shall appoint an attorney for an indigent defendant and not that the court furnish funds with which an indigent may retain counsel.

I think this court should go no further than to state that defendant was not proved guilty beyond a reasonable doubt and reverse and remand the cause for a new trial. In my opinion, the majority has exceeded the bounds of judicial restraint in ordering the county treasurer to pay the fees of an expert witness hired by defendant.

. Mr. JUSTICE UNDERWOOD, concurring in part and dissenting in part:

I agree that this case must be remanded for a new trial because of the trial court's error in precluding defendant from offering evidence that a similar traveler's check was forged and cashed after defendant was in custody, but I cannot agree with the extension of the defendant's right to the assistance of expert witnesses which is accomplished by the majority opinion.

The General Assembly has (Ill. Rev. Stat. 1965, chap. 38, par. 113—3(e)) provided for public payment of a maximum of $250 as fees to necessary expert witnesses for indigent defendants in capital cases. It seems to me that this legislative expression of the extent to which the State must provide expert witnesses for indigent defendants is binding upon this court unless we are prepared to say that either the State or Federal constitutions give such persons a greater right. No United States Supreme Court decision of which I am aware so holds. The majority opinion in this

case cites decisions of that court (*Gideon, Griffin*) in which the rights there proclaimed were found to be constitutionally guaranteed, but the majority here do not specifically hold the newly announced rights of indigent defendants to expert witnesses at public expense to be constitutional in nature. Nor, in the absence of a compelling Supreme Court decision, could such conclusion easily be reached, for we have indicated the contrary in three recent cases, in the last of which the opinion was adopted only last term, (*People* v. *Nash, post* 275; *People* v. *Myers,* 35 Ill.2d 311; *People* v. *Carpenter,* 13 Ill.2d 470), none of which are even mentioned, much less over-ruled, by the majority herein. If these decisions are correct, as I believe them to be, the sole remaining basis for the majority opinion is that those who concur therein disagree with the wisdom of the legislative action in that they regard it as too restrictive. That such is the case seems further evident from the "trust" announced by the majority that "the General Assembly will consider the expansion of section 113—3(e) to include noncapital cases where expert testimony is deemed by the trial judge to be crucial to a proper defense."

I do not quarrel with the majority premise that the bare right to subpoena expert witnesses is of little value, for without an opportunity for pre-trial preparation the value of the expert's testimony would be, in all likelihood, substantially reduced. And, while an expert may undoubtedly be subpoenaed and compelled to appear, it seems to me there are substantial constitutional questions (deprivation of property without due process) as to whether a court may compel him to expend his time and apply his expertise to pre-trial examination of documents without compensating him therefor. But these factors do not invalidate the legislative limitation upon the type of case in which expert assistance shall be available to indigent defendants unless the right thereto is constitutional in dimension. There are, in fact, compelling reasons for such limitations. It would be un-

realistic to assume that the holding in the majority opinion that there are "instances in noncapital cases" where experts must be furnished indigent defendants will result in other than a request for such assistance by such defendants in most cases involving issues upon which an expert could conceivably be employed. We are aware, from the substantial number of records coming before us, that the trial courts frequently refer defendants to clinics or private physicians for the purpose of pretrial competency examinations. In all of such cases, presumably, the indigent defendant will now also be entitled to examination by his own psychiatrist or psychologist or both. Cases involving signatures, finger prints, chemical analyses and ballistics, to mention only a few, will automatically qualify as may every case in which an expert in any field appears for the State either as a witness or assists in pretrial investigative or preparatory activities.

While it is not my intention to make an *ad terrorem* presentation, it seems proper to point out the substantial arguments against the result reached by the majority without any constitutionally imposed necessity for so doing, and in the face of legislative decision to the contrary.

I would abide by our earlier indications in *Nash, Myers* and *Carpenter* and uphold the trial court's action in denying defendant's request for expert assistance.