THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH ZEHR, Defendant-Appellant.

Third District   No. 81—552

Opinion filed November 10, 1982.

HEIPLE, J., dissenting.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Gary L. Peterlin, State's Attorney, of Ottawa (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Defendant Kenneth Zehr was indicted for home invasion, burglary, aggravated battery, and theft. After the theft charge was dismissed, the cause proceeded to a jury trial in the circuit court of La Salle County. Defendant was convicted of the offenses and received respective, concurrent sentences of 22, 6, and 3½ years in the Department of Corrections.

The incident leading to defendant's convictions began the evening

of October 27, 1980. Hazel Fox, the 68-year-old victim, was living alone as she had lost her husband a week earlier. According to her audio-visual evidence deposition, defendant and a companion came to her home wanting to examine an old car that was for sale. Speaking through her dining room window, she refused to show them the vehicle. The men then left and walked down her driveway toward the road. Fox did not see or hear any vehicle. She then watched television and fell asleep.

Around 11 p.m., she woke up and went downstairs to her basement to check the furnace. In the basement, Fox heard the rustling of a shower curtain in the bathroom, which was a few feet from the furnace. Two persons appeared in the bathroom doorway. After pausing a moment, one of the persons knocked the witness' glasses off, rendering her virtually blind. She was then bound, gagged, and kept in the basement for several hours. During that time, the attackers ransacked her home and returned to the basement several times to strike their victim. Fox later heard a truck start and drive away, eventually got loose, found an old pair of glasses, and called her cousin. Several items, which the witness said were missing from her home, were later in defendant's possession. Much additional evidence was presented, but as the sufficiency of the evidence is not questioned, we shall only consider that necessary for the resolution of the issues herein.

The first issue presented for our review is whether the trial court erred in allowing the victim's testimony to be recorded by an audio-visual device. Supreme Court Rule 206(e) (87 Ill. 2d. R. 206(e)) provides in part that "[t]he testimony shall be taken stenographically or by sound-recording device, and upon agreement of the parties, or by order of the court for good cause shown, may be taken by audio-visual recording device." As there was no agreement of the parties, the question becomes whether "good cause" for the audio-visual deposition was shown. It should be noted Supreme Court Rule 206(e) (87 Ill. 2d R. 206(e)) is a rule of civil procedure, not criminal procedure, although its general terms are incorporated into the criminal procedure by Supreme Court Rule 414(b) (87 Ill. 2d R. 414(b)). At the time Supreme Court Rule 206(e)) was amended in 1975 to permit audio-visual recording of evidence depositions, the authors offered no comments or advice about the amendment. This is of special importance since it indicates there was no effort to fashion the amendment in any manner that would have significance in criminal proceedings.

The State contends that the "good cause shown" was the importance of the jury observing the witness' demeanor and remind us that this is the 20th century. The trial court specifically noted the cen-

tury and the fact the videotape would show Fox' demeanor. We quarrel not with the chronometric reminder and observation regarding demeanor; however, we do not believe the legislature intended either to constitute "good cause" in the present context. Assuming the 20th century reminder suggests that available recording technology be utilized, the "agreement of the parties" and "good cause shown" limitations cause a rejection of the suggestion. As to the observation regarding demeanor, this is a factor which will almost always be present. If the observation of a witness' demeanor were to constitute "good cause," then such would be present in virtually every case. We therefore find no "good cause shown" and the use of the videotape to constitute reversible error.

We note parenthetically that the legislative limitations are not without reason. Historically, evidence depositions were not admissible in criminal cases. (*People v. Malone* (1976), 41 Ill. App. 3d 914, 354 N.E.2d 911.) Even now, the circumstances permitting the use of depositions against an accused in a criminal case must be extraordinary (see 23 Am. Jur. 2d *Depositions and Discovery* sec. 120 (1965); Annot., 41 A.L.R. Fed. 764 (1979) ("exceptional circumstances" under 18 U.S.C.S. sec. 3503), and statutes allowing such depositions are strictly construed (see 23 Am. Jur. 2d *Depositions and Discovery* sec. 11 (1965)). Videotaped depositions, or televised testimony, present additional problems. Not only do they run the risk of prejudicing the accused by overemphasizing the witness' testimony, the formal court setting has an impact on witness performance in that it creates psychological compulsions, which may not be present when testimony is taken outside the courtroom, toward testifying accurately and completely (see Annot., 80 A.L.R.3d 1212 (1977), citing Burt, *The Case Against Courtroom TV*, 12 Trial Magazine 62 (July 1976)). It has also been said that the demeanor of a witness comes across differently over television than when a witness is in the courtroom. (See *Kansas City v. McCoy* (Mo. 1975), 525 S.W.2d 336, 340 (dissenting opinion).) All of these factors support the legislative limitations of the statute here involved.

■ As this cause must be remanded for a new trial, we shall address two additional issues likely to arise again. The first is whether the trial court abused its discretion by failing to ask prospective jurors the following supplemental questions provided by defense counsel:

"1. If at the close of all the evidence and after you have heard arguments of counsel you believe that the State has failed to sustain the burden of proof and has failed to prove the

defendant guilty beyond a reasonable doubt, would you have any hesitation whatsoever in returning a verdict of Not Guilty?

2. If the defendant, Mr. Zehr, decides not to testify in his own behalf, would you hold it against him?

3. Do you understand that the defendant is presumed innocent and does not have to offer any evidence in his own behalf, but must be proven guilty beyond a reasonable doubt by the State?"

Each of these questions goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury. While the scope of a *voir dire* examination is ordinarily left to the sound discretion of the court, counsel should be permitted to make any reasonable and pertinent search to ascertain whether the minds of the jurors are free from bias and prejudice. (*People v. Carpenter* (1958), 13 Ill. 2d 470, 150 N.E.2d 100, *cert. denied* (1958), 358 U.S. 887, 3 L. Ed. 2d 115, 79 S. Ct. 128.) While Supreme Court Rule 234 (87 Ill. 2d R. 234) proscribes questioning jurors concerning matters of law or instructions, we do not so perceive the supplemental questions as concerning such, but rather see them as directly probing for bias and prejudice. We note further that if such a bias or prejudice is present, a jury instruction is hardly curative. (See *People v. Newlun* (1980), 89 Ill. App. 3d 938, 940-41, 412 N.E.2d 1055, 1057 (concurring opinion), *appeal denied* (1981), 83 Ill. 2d 573.) We therefore find the failure of the court to submit the questions to the jury an abuse of discretion and direct it to include the questions in its *voir dire* examination if they are again tendered. But see, *e.g., People v. Lowe* (1975), 30 Ill. App. 3d 49, 54, 331 N.E.2d 639, 642.

■ The second additional issue likely to arise again is whether the trial court erred in denying defendant's request for an absence of witness instruction, Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971). The witness in question was Terry Garrett, the codefendant. It is well established that the State is not required to call all of the witnesses to a crime in proving its case (*People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E. 313), and where a similar instruction was tendered and refused, no error was found (*People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029). It further appears that Garrett was known and available to both defendant and the State. The court therefore did not err in refusing the instruction.

Accordingly, the judgment of the circuit court of La Salle County is reversed and this cause remanded for a new trial, with directions.

Reversed and remanded with directions.

SCOTT, J., concurs.

JUSTICE HEIPLE, dissenting:

I do not agree with the majority's conclusion that the trial judge erred in admitting the victim's videotaped testimony, nor do I believe that he abused his discretion by refusing the defendant's proposed *voir dire* questions.

The victim in this case was Hazel Fox, a 68-year-old woman with a history of hypertension and arteriosclerosis. The trial court ordered that an evidence deposition of her testimony be taken since the condition of her health raised the substantial probability that her testimony would be unavailable at trial. (Supreme Court Rule 414(a) (87 Ill. 2d R. 414(a)).) This rule also provides that an evidence deposition in a criminal trial shall be taken in accord with Supreme Court Rule 206 (87 Ill. 2d R. 206) which provides that a deposition may be videotaped by order of the court for good cause shown. The State argued that it was important for the jury to observe Mrs. Fox' demeanor. The trial judge agreed and ordered that the deposition be videotaped. At trial, a medical expert testified that Mrs. Fox' condition had not improved and that she would not be able to testify in person. Hence, the trial court admitted the videotaped evidence deposition over the objection of defense counsel.

In reversing the trial court, the majority does not challenge the appropriateness of an evidence deposition in this case. Rather, they feel that the State failed to demonstrate good cause for using videotaped testimony. Whether good cause was shown was a matter left to the discretion of the trial judge and he did not abuse that discretion in this case. While I would agree with the majority that the need for the jury to observe a witness' demeanor would not be good cause in every case, I do believe that it was sufficient under the circumstances of this case.

Good cause must certainly encompass the demeanor of the complaining witness when that witness is the only individual who can identify the defendant as the perpetrator of the crime. Clearly the trial judge did not err in finding that the demeanor of this particular witness was important to the jury in determining the defendant's guilt or innocence. Even the defense counsel would have preferred that Mrs. Fox testify in person and specifically referred to her demeanor during closing arguments. In view of the importance of her testimony, a videotaped evidence deposition was the next best thing to Mrs. Fox' presence at trial. It enabled the jury to better assess the credibility of this key witness than the reading of a deposition would

have. However, the defense counsel argued that showing the jury a videotape tended to overemphasize Mrs. Fox' testimony. The majority agrees with the defense, adding that a videotape may not be an accurate reflection of the witness' true demeanor. It is my position that these alleged problems are not inherent flaws in all videotaped testimony but are factors which the trial court should consider on a case-by-case basis in deciding whether or not to use that method of recording. Annot., 66 A.L.R.3d 637 (1975).

The use of videotaped evidence depositions should be encouraged where good cause is shown. The majority opinion places an undue restriction on the trial judge's discretion in determining good cause, therefore, I dissent.

I also do not think that the trial judge abused his discretion in refusing to give the following supplemental *voir dire* questions tendered by defense counsel:

> "1. If at the close of all the evidence and after you have heard arguments of counsel you believe that the State has failed to sustain the burden of proof and has failed to prove the defendant guilty beyond a reasonable doubt, would you have any hesitation whatsoever in returning a verdict of Not Guilty?
>
> 2. If the defendant, Mr. Zehr, decides not to testify in his own behalf, would you hold it against him?
>
> 3. Do you understand that the defendant is presumed innocent and does not have to offer any evidence in his own behalf, but must be proven guilty beyond a reasonable doubt by the State?"

Supreme Court Rule 234 (73 Ill. 2d R. 234) clearly forbids any examination of jurors, directly or indirectly, concerning matters of law or instructions:

> "The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper. Questions shall not directly or indirectly concern matters of law or instructions."

Although the majority may correctly perceive the proposed questions as probing for bias and prejudice, the questions also have the indirect effect of examining the jurors concerning matters of law and instructions.

The agreed statement of the parties concerning *voir dire* examination indicates that the jurors were asked if they would follow the instructions of law given by the court even though they might personally disagree with the instructions. The questions offered by the defense were then incorporated into the pattern jury instructions given by the court. This procedure adequately encompassed the proposed questions while remaining within the bounds of Rule 234. To allow the defense to submit questions on *voir dire* which amount to jury instructions is to indoctrinate and pre-educate the jurors concerning matters of law and that is forbidden. *People v. Phillips* (1981), 99 Ill. App. 3d 362.

I also note that the appellant does not claim that the jury selected was biased or unfair: "Where a voir dire examination—whether conducted by the court or by counsel—results in a qualified and impartial jury, no prejudicial error occurs in its selection." (*People v. Carruthers* (1974), 18 Ill. App. 3d 255, 261.) For these reasons, I would affirm the judgment of the trial court.