THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS CLANKIE *et al.*, Defendants-Appellants.

Second District   Nos. 2—87—0416, 2—87—0417 cons.

Opinion filed March 17, 1989.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Charles M. Schiedel and Gary S. Rapaport, both of State Appellate Defender's Office, of Springfield, for appellants.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers and Colleen Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendants, Thomas Clankie, a/k/a Tom or Tommy Clankie, and Karen Clankie, appeal from the judgment of the circuit court of Stephenson County finding them guilty of the offense of State benefits fraud (Ill. Rev. Stat. 1985, ch. 38, par. 17—6(a)). The trial court sentenced Thomas to four years' imprisonment and Karen to 30 months' probation conditioned upon her performing 1,000 hours of public service and serving 60 days in jail. Two issues are raised on appeal: (1) whether the trial court erred in refusing to authorize defendants, who are indigent, to hire an independent handwriting expert to assist in their defense; and (2) whether the trial court erred in considering the statutory provisions for good-behavior allowance when sentencing Thomas. We affirm.

On April 3, 1986, a grand jury indicted defendants for theft, State benefits fraud, and conspiracy based on defendants' alleged acts of obtaining and receiving public aid by failing to report that Thomas was employed on a full-time basis and by misrepresenting his domicile. Defendants were appointed separate trial counsel, and each waived

the right to a trial by jury. The trial court scheduled a bench trial for January 20, 1987.

On December 26, 1986, the State filed a motion requesting handwriting exemplars from both defendants. On January 20, 1987, the scheduled date of trial, the State renewed its request for handwriting exemplars and also moved for a continuance. The trial court granted the State's motions and continued the cause for trial to March 17, 1987. The court set February 15, 1987, as the cutoff date for discovery. The State did not disclose the results of the handwriting analysis until March 3, 1987, and did not identify its expert until March 9, 1987. The State's expert, Fabian Tasson, was an employee of the Illinois Department of Public Aid, the State agency which is the designated victim in this action.

On March 10, 1987, Thomas filed a motion to have an independent handwriting expert appointed to assist him in his defense. No hearing was scheduled on his motion. On March 17, 1987, prior to trial, Thomas renewed his motion. Although the court invited argument on that motion, Thomas did not argue its merits. Rather, Thomas complained generally about the discovery that had taken place up to that point and noted that he had only recently received disclosure of the State's handwriting expert and the results of his tests. Thomas also argued that the State had not made a timely disclosure of 15 to 17 of its witnesses and ultimately sought to bar the testimony of those witnesses. Karen joined in that request. The court declined to bar the testimony of the State's witnesses and stated instead that it would hear objections to each witness at the time the witness was called. Thomas did not seek a ruling on his motion to appoint an independent handwriting expert, and the trial commenced on schedule.

On March 18, 1987, prior to Tasson's testimony, Thomas objected to the State calling Tasson as a witness. Thomas argued that the State had not disclosed the results of the handwriting analysis until March 3, 1987, and had not disclosed Tasson's identity until March 9, 1987. Thomas argued in the alternative that if Tasson was allowed to testify, the trial court should provide Thomas with an independent handwriting expert. Karen joined in that request. The court overruled Thomas' objection to Tasson being called to testify and denied defendants' request for an independent handwriting expert on the basis that it was not timely. The court concluded that defendants waived their objection to Tasson's testimony since they knew that a handwriting expert would be called and failed to object when he was not disclosed by the discovery cutoff date. The court also concluded that defendants' request for appointment of an independent handwriting expert

was not timely, stating that it was not "appropriate to wait until the middle of trial."

According to evidence introduced at trial, defendants began receiving benefits from the Illinois Department of Public Aid in 1980 for themselves and their minor children. Defendants were advised to report any changes in income. Defendants did not report any income from employment despite testimony indicating that Thomas worked as a motor route driver for the Freeport Journal Standard and earned approximately $1,100 per month. Thomas was paid in checks made out to "Fred" Clankie. Fabian Tasson, the State's handwriting expert, testified that the Freeport Journal Standard checks made out to "Fred" Clankie and the public aid checks written to Thomas Clankie bore endorsements in the handwriting of Thomas Clankie, Karen Clankie, or both. A witness from the Illinois Department of Public Aid testified that defendants' benefits, which fluctuated between $348 and $491 per month, would have been discontinued if a member of the household was employed full time.

Other evidence indicated that in July 1983, Karen reported that Thomas no longer resided in the household. Karen reiterated that representation in December 1984 and again in July 1985. However, in November 1984, in an unrelated court proceeding, Karen testified that she and Thomas were living together. In addition, several neighbors testified that Thomas was residing in Karen's household during the period that Karen represented that he was absent.

On April 1, 1987, the trial court filed a memorandum of opinion finding defendants guilty of the offense of State benefits fraud. The remaining charges were merged into the verdict and dismissed.

On April 29, 1987, the trial court held a sentencing hearing. At that time, the court stated:

"And I think that a sentence to the Illinois Department of Corrections is in order. If we were talking in terms of serving a four year period of time and I would think that the State's recommendation of four years would be excessive. And when I view this in terms of the likelihood that he would be released on less than two years and then I think that it is an appropriate sentence.

And I don't see him as being a problem to anyone as far as getting credit for good time when he's incarcerated and I think that he would get that ***."

The court thereafter sentenced Thomas to four years' imprisonment and Karen to 30 months' probation conditioned on performing 1,000 hours of public service and serving 60 days in jail. Defendants filed

their respective notices of appeal on May 5, 1987, and the cases were consolidated for our consideration.

Defendants first contend that the trial court erred in denying Thomas' request for an independent handwriting expert to assist in their defense. We disagree.

■■ Generally, the State must, as a matter of equal protection, provide indigent defendants with the basic tools of an adequate defense or appeal. (*Ake v. Oklahoma* (1985), 470 U.S. 68, 77, 84 L. Ed. 2d 53, 62, 105 S. Ct. 1087, 1093; *Britt v. North Carolina* (1971), 404 U.S. 226, 227, 30 L. Ed. 2d 400, 403, 92 S. Ct. 431, 433.) Illinois has long recognized that a defendant may be entitled to funds to hire an expert witness where expert testimony is deemed critical to a proper defense. (*People v. Glover* (1971), 49 Ill. 2d 78, 82-83; *People v. Watson* (1966), 36 Ill. 2d 228, 234; *People v. Kegley* (1988), 175 Ill. App. 3d 335, 339.) Such an entitlement is established where the defendant demonstrates that the expert services sought are necessary to prove a crucial issue in the case and where the defendant's financial inability to obtain his own expert will prejudice his case. (*Glover*, 49 Ill. 2d at 82-83.) In *Watson*, our supreme court considered whether an indigent defendant on trial for forgery was entitled to funds with which to obtain the services of a document examiner. (*Watson*, 36 Ill. 2d at 229-30.) Noting that the issue of handwriting went to the heart of the defense, the court found that the opinion of a handwriting expert may have been crucial to the defendant's case and his lack of funds prevented him from presenting to the jury evidence which may have established his innocence. (36 Ill. 2d at 234.) Thus, the court held that the defendant was entitled to a reasonable fee for the purpose of hiring a document examiner. 36 Ill. 2d at 234.

■■ ■ However, although a defendant may, under certain circumstances, be entitled to obtain State-paid assistance in preparing his defense, the right to such assistance may be waived where it is not presented in a timely fashion. (See *People v. Moore* (1986), 147 Ill. App. 3d 881, 889 (defendant's motion for a psychiatric examination *made at the close of evidence* was properly denied as untimely); *People v. Strange* (1980), 81 Ill. App. 3d 81, 87-88 (defendant's motion for appointment of a State-paid psychiatrist or psychologist *made half-way through a two-week long trial* was properly denied as untimely); *People v. Hudson* (1972), 7 Ill. App. 3d 333, 337-38 (indigent defendant's motion for a copy of a codefendant's trial transcript was properly denied as untimely when *made on the "eve" of trial*).) In reviewing the trial court's denial of a defendant's motion for State-paid assistance in preparing his defense, the trial court's decision should not be reversed

absent an abuse of discretion. See *Strange*, 81 Ill. App. 3d at 88.

■ In the instant action, the trial court concluded that Thomas' request for an independent handwriting expert to assist defendants in their defense was untimely. We note that the State filed its motion for handwriting exemplars on December 26, 1986. The State renewed its motion on January 20, 1987, at which time the court granted the State's motion and continued the trial to March 17, 1987. Thus, defendants had notice that handwriting would be an issue at the trial approximately two months prior to the trial's commencement. However, Thomas did not file his motion requesting an independent handwriting expert until March 10, 1987, only seven days prior to the scheduled date of trial.

Moreover, although *filing* his motion in advance, albeit only seven days prior to trial, Thomas did not request a *hearing* on that motion until the beginning of the trial. At that time, despite the court's invitation to hear argument on his motion, Thomas did not argue the motion on the merits, but rather complained generally about the discovery that had been taking place throughout the trial. At the conclusion of his argument, Thomas did not seek a ruling on his motion, but rather asked the court to bar the testimony of approximately 15 to 17 of the State's witnesses for nondisclosure. No further mention was made regarding Thomas' request for an independent handwriting expert, and the trial commenced on schedule. Thomas did not renew his request for an independent handwriting expert until the second day of trial after the State called its handwriting expert. The court determined that such a request at that stage of the proceedings was untimely.

■ A defendant has the responsibility for obtaining rulings on his motions, and his failure to do so constitutes a waiver of those issues on review. (*People v. Thibudeaux* (1981), 98 Ill. App. 3d 1105, 1109.) In the instant action, Thomas did not seek a *hearing* on his motion between March 10, 1987, when the motion was filed, and March 17, 1987, when the trial began. At that time, Thomas neither argued his motion nor sought a ruling on it. Thomas did not seek a *ruling* on his motion until the middle of trial. We cannot say that the trial court's decision denying his motion as being untimely was an abuse of discretion given the ample opportunity in which Thomas had to obtain a ruling on his motion and the fact that such a ruling was not requested until a significant portion of the trial had elapsed. (See *Strange*, 81 Ill. App. 3d at 87-88.) We further note that, while the source of the signatures on the public aid checks and payroll checks from the Free-port Standard Journal was an issue in the trial that warranted testi-

mony from a handwriting expert, the totality of the evidence presented was not so closely balanced that the trial court's denial of Thomas' request was prejudicial. (See *Thibudeaux*, 98 Ill. App. 3d at 1109.) Testimony from other witnesses indicates that Thomas not only lived with Karen during the period Karen was receiving checks on the pretense that he was absent, but also that Thomas worked for the Freeport Standard Journal during a period when he and Karen were receiving checks on the pretense that he was unemployed. Accordingly, we conclude that the trial court did not err in denying Thomas' request for an independent handwriting expert.

Thomas next contends that the trial court erred in considering the statutory provisions for good-behavior allowance when sentencing him. We disagree.

■ Initially, the State argues that Thomas waived this issue by failing to object to the trial court's remarks regarding good-behavior allowance at the sentencing hearing. We agree with the State that Thomas' failure to object to the remarks at the sentencing hearing constitutes a waiver of this issue on appeal. See *People v. Harvey* (1987), 151 Ill. App. 3d 881, 883; *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 113.

■ In any event, we do not find the trial court's consideration of good-behavior credit to be an improper factor in sentencing. In *People v. Smith* (1986), 148 Ill. App. 3d 655, 655-56, the Appellate Court for the Fourth District considered whether a prosecutor's remarks in closing argument that the defendant would obtain "good-time" credit and an early release constituted grounds for reversal. In imposing sentence, the court stated that it had considered the arguments of counsel, and the defendant argued that the court's reliance on that argument was improper. (148 Ill. App. 3d at 656.) The appellate court stated that whether a defendant would receive credit for good behavior was not so speculative that it would be an improper factor in sentencing. (148 Ill. App. 3d at 656.) The court went on to expressly hold that consideration of "good-time" credit available to a defendant is a permissible consideration in sentencing. 148 Ill. App. 3d at 657.

In the subsequent case of *People v. Harvey* (1987), 151 Ill. App. 3d 881, 882, the court considered whether the remarks of the *trial court* in passing sentence that the defendant might be released after receiving credit for good behavior were improper and grounds for reversal. That court noted, as we do in the instant case, that the defendant failed to object to the remarks at the time of sentencing and thus waived the issue on appeal. (151 Ill. App. 3d at 883.) However, the court went on to note that it would reject the defendant's

claim were it to consider his argument on the merits. (151 Ill. App. 3d at 883.) The court stated:

"We see no reason why a sentencing judge may not consider the practical fact of good-time credit in fashioning a sentence which reflects the seriousness of a defendant's offense and his potential for rehabilitation. [Citations.] It is entirely proper for a sentencing court to search within reasonable bounds for facts which aid in crafting a suitable sentence. [Citation.] We disagree with the defendant's assertion that reliance upon otherwise proper factors in passing sentence will destroy sentencing parity in Illinois. The defendant's sentence was within statutory bounds and reflects both the seriousness of his crime and his history of criminal activity. We find no abuse of discretion in the sentence imposed by the court." 151 Ill. App. 3d at 883.

We note that both *Smith* and *Harvey* cite this court's decision in *People v. Torgeson* (1985), 132 Ill. App. 3d 384, in support of the conclusion that a trial court's consideration of good-behavior credit is not an improper factor in sentencing. In *Torgeson*, we determined that although the trial court remarked about the defendant's potential for receiving "good-time" credit, those remarks were not the basis for the defendant's sentence. (132 Ill. App. 3d at 389.) However, we went on to note that even if we were to interpret the court's comments as indicating that "good-time" credit was considered in imposing the defendant's sentence, we would not find consideration of that factor to be an abuse of discretion. (132 Ill. App. 3d at 389.) This court stated:

"In the absence of any authority to the contrary, we see no reason why a sentencing judge may not consider, as one factor, the realities of the sentencing law in fashioning a sentence which is reflective of both the seriousness of the offense and the defendant's rehabilitative potential. A sentencing judge does not act in a vacuum, nor can he be expected to disregard the possibility of good-time credit which is inherent in every sentence of imprisonment. *** [A] sentencing court may properly determine the minimum amount of actual incarceration which is appropriate in light of the seriousness of the offense and the history and character of the defendant." 132 Ill. App. 3d at 389.

In the instant action, the trial court determined that an appropriate sentence under the circumstances of the case required *actual* incarceration for approximately two years. The court considered Thomas' rehabilitation potential and concluded, given the statutory provisions for good-behavior credit, that a sentence of four years' im-

prisonment would result in *actual* incarceration for two years. We conclude that the trial court properly considered the likelihood of Thomas' rehabilitative potential and the actual time he would serve when imposing sentence.

For the reasons set forth above, we affirm the judgment and sentence of the trial court.

Affirmed.

UNVERZAGT, P.J., and REINHARD, J., concur.