FIFTH DIVISION
June 30, 2010

No. 1-09-0197

| | |
|---|---|
| *In re* T.W., a Minor, | ) Appeal from the |
| (The People of the State of Illinois, | ) Circuit Court of |
| | ) Cook County. |
| Petitioner-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| T.W., | ) Honorable |
| | ) Edward Pietrucha, |
| Respondent-Appellant). | ) Judge Presiding. |

JUSTICE HOWSE delivered the opinion of the court:

Respondent T.W. was charged in a petition for adjudication of wardship with one count of aggravated criminal sexual abuse and two counts of aggravated criminal sexual assault. The trial court entered a finding of delinquency on all counts. Respondent was sentenced to an indeterminate amount of time in the Illinois Department of Juvenile Justice, not to exceed his twenty-first birthday. On appeal, respondent contends the trial court erred in denying him funds to obtain an expert witness, in violation of section 113-3(d) of the Illinois Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3(d) (West 2008)). Respondent also contends his trial counsel rendered ineffective assistance by failing to withdraw as counsel after the trial court denied funds for an expert witness, and by misunderstanding the basic elements

of the charged offenses. For the reasons that follow, we affirm the trial court's judgment.

FACTS

The testimony adduced at respondent's trial established that on June 14, 2005, the six-year-old victim, A.S., went to the Evanston YMCA with his mother for swim lessons. While A.S. was changing into his swimsuit, an African-American male allegedly walked into the men's locker room and offered the victim a lollipop. The male took the victim into a bathroom stall and put him on a changing table. The male then rubbed his penis on the victim's anus. After the male took the victim off the changing table and put him face-down on the floor, the male continued to rub his penis on the victim's anus. When the male let the victim go, A.S. pulled on his swim trunks and went to the pool area.

After the victim told a YMCA swim instructor and his mother what happened, the YMCA director called the police. While they waited for the police to arrive, the victim went into the men's locker room with the swim instructor to change back into his street clothes. When Evanston police officer Heidi Bernhardt arrived, she met with the victim and his mother. Officer Bernhardt then went to the locker room to photograph the scene. She recovered a towel from a garbage can, and a condom that was still in its package from a stairwell. Both items were placed

into property inventory in a sealed condition at the Evanston police station. Evanston police detective Berman also responded to the scene. According to Detective Berman, the victim described the person who assaulted him as "in his 30's, about six feet tall, slim build with braided hair pulled back into a ponytail, wearing a red shirt, dark pants."

Later, when the victim's mother returned to her home, she noticed her son's swimsuit had a stain on the inside of it. She put the suit in a ziplock bag and called the police. Officer Bernhardt picked the bag up from the victim's home around 20 minutes later. The stain on the swimsuit was subsequently used by the Illinois State Police lab to generate a DNA profile that did not belong to the victim.

Prior to respondent's trial, defense counsel filed a motion to provide the defense with funds for an expert witness. The motion noted that during the discovery process, defense counsel discovered the State's case rested entirely on DNA analysis that did not exclude the respondent. Defense counsel alleged the respondent was indigent and was being represented without charge "by the indigent defense nonprofit Evanston Community Defender Office, Inc." Defense counsel requested that the court enter an order granting funds to be used by the defense "to hire, to consult with, and potentially call as a witness an expert in DNA

1-09-0197

analysis."

During a hearing on the motion, defense counsel explained that he worked for the Evanston Community Defender's Office, which is a not-for-profit corporation funded in part by the City of Evanston to assist low-income families.  The trial court noted:

> "[T]he normal way an indigent person is
> represented in this court and in this county
> system are by the Cook County Public
> Defender's Office.  The Cook County Public
> Defender's Office is funded by the taxpayers
> of Cook County, and they have in their
> arsenal, money for expert witnesses no matter
> whether –- they may be for sex offenses, or
> for murder, or any other types of offenses."

The court informed defense counsel that if the Evanston Community Defender's office did not feel it could adequately represent defendant by paying for an expert witness, the court would appoint the public defender's office to represent the minor.

When defense counsel explained the Evanston Community Defender's office could not pay for the expert, much in the same way that private appointed counsel would not have that in their

1-09-0197

resources, the court found:

> "There's a key word; appointed, counsel. You voluntary [sic] stepped in and represented this individual. You were not appointed by this Court. *** We are all involved in a budget crunch, as is Cook County. They're laying off workers everywhere. And there's a system developed in Cook County called Cook County Public Defender's office who represent indigent individuals. You voluntarily stepped in and took this case. If you cannot afford –- if you're telling me the Evanston Community Defender's Office cannot afford to represent him, then I'm going to appoint the Cook County Public Defender's office to sit in and join in this case."

The court then appointed the public defender to represent respondent. At a subsequent status hearing, the public defender's office objected to being appointed to the case. The court vacated the appointment of the public defender without discussion.

Returning to the issue of the pending motion for funds for an expert witness, the trial court noted that because the

1-09-0197

Evanston Community Defender's program was not appointed by the
court it became its responsibility to provide funding for any
expert witnesses. The court denied defense counsel's motion.
The court admitted the request for funds was for a "crucial
expert witness." The court said that if defense counsel could
not adequately represent respondent, it was counsel's duty to
withdraw so the public defender could be appointed. In response
to defense counsel's claim that he was otherwise adequately
qualified to represent the minor besides the lack of funds to
hire an expert, the court noted:

> "You voluntarily came in and took this case.
> Now it becomes your responsibility to
> adequately represent this minor. That's an
> ethical obligation on your behalf. It does
> not effect the minor's 6th Amendment right to
> Counsel. But, you have got to represent this
> minor adequately. If you feel that you
> cannot represent this minor in the nature and
> structure of your office, then it becomes --
> then that's a matter up to you."

Defense counsel did not withdraw and the matter proceeded to
trial.

At trial, the victim's mother testified she heard A.S. tell

the police the man who attacked him was in his late 20s to early 30s. Detective Gershon testified he photographed respondent on December 14, 2007, which included pictures of tattoos on respondent's forearms. During his prior custodial encounters with respondent, Detective Gershon had not mentioned that respondent had any tattoos in his reports. Detective Gershon said he could not be certain if he looked at respondent's arms on those occasions.

Sergeant Collier testified he collected a buccal swab from respondent on December 14, 2007, following a court order. Blake Aper, a forensic DNA and biology analyst at the Illinois State Police Rockford Forensic Science Lab, testified he was qualified as an expert in forensic DNA analysis. He said that after receiving the swimsuit in a sealed condition, he saw a stain on the inside rear portion of the suit. Aper tested the stain for semen and saw sperm cells. He then performed tests to extract DNA from the sample and create a DNA profile. After comparing respondent's DNA profile from the buccal swab to the DNA profiled identified from the stain on the victim's suit, Aper offered his expert opinion that the DNA profiles matched. Aper testified the DNA profile would be expected to occur in 1 out of 4.6 quintillion black individuals, 1 out of 2.6 septillion white individuals, or 1 out of 3.7 septillion Hispanic individuals.

On cross-examination, Aper explained the statistics are actually based on how frequently you would find that profile in the random population, not that it belongs to a certain person. Aper admitted he could not tell how the stain got onto the swimsuit. Aper admitted the stain could have been transferred onto the swimsuit if the suit had been dropped onto some fluid on the ground or the victim sat in the fluid.

Bonnie Brunette testified for the defense that she conducted a "victim-sensitive interview" with A.S. on June 16, 2005. When Brunette asked A.S. to described his attacker during the interview, A.S. said the person was about the age of his dad, late 20s to early 30s. A.S. told her the attacker was about 6 feet tall and looked like a basketball player. A.S. also told Brunette he thought the man in the locker room had tattoos on his forearms and was unshaven.

Respondent's adoptive mother testified that in June 2005, respondent did not have any tattoos or facial hair. She said respondent was 5 feet 6 inches tall at the time. The parties stipulated that Saul Rivere, a tattoo artist, would testify that to the best of his recollection he did respondent's tattoos during the first third of 2007. Defense counsel did not present a DNA expert witness at trial.

The trial court found respondent guilty of aggravated

criminal sexual abuse and aggravated criminal sexual assault. The court ordered respondent be committed to the Illinois Department of Juvenile Justice for an indefinite period of time, with the sentence to terminate upon respondent reaching 21 years of age unless discharged sooner by the department. Respondent appeals.

## ANALYSIS

### I. Section 113-3(d) of the Code

Respondent contends that because he was indigent and his defense counsel was acting on a pro bono basis, the trial court erred in denying respondent funds to obtain an expert witness under section 113-3(d) of the Code.

### A. Motion to Fund

The State counters the trial court properly denied defense counsel's request for funds for an expert witness because defense counsel was not court appointed, meaning section 113-3(d) of the Code did not apply. We disagree.

A trial court's denial of a motion for funds for an expert witness is generally reviewed for an abuse of discretion. People v. Page, 193 Ill. 2d 120, 153, 737 N.E.2d 264 (2000). Because the proper construction of a statute is a question of law, however, we review a trial court's interpretation of a statute de

novo. People v. McBride, 395 Ill. App. 3d 204, 209, 916 N.E.2d 1282 (2009).

Initially, we note a defendant's right to counsel has been recognized as a fundamental right at both the federal and state levels. The sixth amendment of the United States Constitution provides that in all criminal prosecutions, "the accused shall enjoy the right *** to have the Assistance of Counsel." U.S. Const., amend. VI. That sixth amendment guarantee requires an indigent criminal defendant be provided with counsel at the public's expense in order to ensure fairness at his trial. Gideon v. Wainwright, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963). Section 8 of article 1 of the Illinois Constitution provides that in all criminal prosecutions, "the accused shall have the right to appear and defend in person and by counsel," and "to have process to compel the attendance of witnesses in his or her behalf." Ill. Const. 1970, art. I, §8. The sixth amendment right to counsel includes a criminal defendant's right to the effective assistance of counsel (Cuyler v. Sullivan, 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980)), and generally the State must, as a matter of equal protection, "provide indigent defendants with the basic tools of an adequate defense or appeal" (People v. Clankie, 180 Ill. App. 3d 726, 730, 536 N.E.2d 176 (1989), citing Ake v. Oklahoma, 470 U.S. 68, 77,

1-09-0197

105 S. Ct. 1087, 1093, 84 L. Ed. 2d 53, 62 (1985)).

Expert witnesses "are often essential to the defense of indigent defendants in criminal proceedings," and "these witnesses are not expected to donate their services but must usually be offered a substantial fee." People v. Kinion, 97 Ill. 2d 322, 334, 454 N.E.2d 625 (1983). Illinois has long recognized that a defendant may be entitled to funds to hire an expert witness where the expert's testimony is deemed critical to a proper defense. Clankie, 180 Ill. App. 3d at 730, citing People v. Glover, 49 Ill. 2d 78, 82-83, 273 N.E.2d 367 (1971). "It is well established that a denial of funds to an indigent for the securing of expert witnesses in defense of criminal charges may violate constitutional protections." People v. Lawson, 163 Ill. 2d 187, 220, 644 N.E.2d 1172 (1994), citing People v. Watson, 36 Ill. 2d 228, 221 N.E.2d 645 (1966).

Section 113-3(b) of the Code (725 ILCS 5/113-3(b) (West 2008)) provides, in relevant part, that: "In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel." Section 113-3(d) of the Code provides:

> "In capital cases, in addition to
> counsel, if the court determines that the

-11-

1-09-0197

> defendant is indigent the court may, upon the filing with the court of a verified statement of services rendered, order the county treasurer of the county of trial to pay necessary expert witnesses for defendant reasonable compensation stated in the order not to exceed $250 for each defendant."  725 ILCS 5/113-3(d) (West 2008).

Our supreme court construed section 113-3(d) to also extend to indigent defendants charged with non-capital felonies in Watson.  Watson, 36 Ill. 2d at 233.  The supreme court based the extension of the statutory language on the constitutional right to compel the attendance of witnesses, noting "it is at once apparent that the right to summon witnesses is fundamental to our legal system."  Watson, 36 Ill. 2d at 233.  While the court recognized there is a distinction between the right to call witnesses and the right to have those witnesses paid for by the government, the court noted that in certain instances involving indigents the lack of funds to pay for witnesses will often preclude the defendant from calling that witness and occasionally prevent him from offering a defense.  Watson, 36 Ill. 2d at 233.

An entitlement to funds under section 113-3(d) of the Code is established where "the defendant demonstrates that the expert

-12-

services sought are necessary to prove a critical issue in the case and where the defendant's financial inability to obtain his own expert will prejudice his case." Clankie, 180 Ill. App. 3d at 730, citing Glover, 49 Ill. 2d at 82-83.

The parties do not dispute respondent was indigent. The record also clearly establishes that the trial court conceded respondent's request for funds was for a "crucial expert witness." Accordingly, the issue of whether respondent was entitled to funds to pay for the necessary expert witness turns solely on whether section 113-3(d) of the Code applies only in cases where an indigent criminal defendant's defense counsel is court appointed.

A reviewing court's primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. People v. Whitney, 188 Ill. 2d 91, 97, 720 N.E.2d 225 (1999). A statute's language must be afforded its plain, ordinary, and popularly understood meaning. People v. Robinson, 172 Ill. 2d 452, 457, 667 N.E.2d 1305 (1996). We will not depart from the plain meaning of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. People v. Black, 394 Ill. App. 3d 935, 939, 917 N.E.2d 114 (2009). We will also presume the legislature did not intent an absurd, inconvenient, or unjust

-13-

result in enacting the legislation. People v. Brown, 374 Ill. App. 3d 385, 388, 871 N.E.2d 931 (2007). Moreover, in a criminal prosecution, any ambiguity in a statute should be construed and resolved in the defendant's favor. Robinson, 172 Ill. 2d at 457.

In Lawson, the defendant contended the trial court erred in denying his motion for funds to obtain the services of a fingerprint and shoeprint expert. Lawson, 163 Ill. 2d at 218-29. The court noted the expert's opinion of the shoeprint, as acknowledged by the prosecutor, was the strongest evidence presented by the State because it was the only evidence capable of establishing defendant's actual presence at the scene of the murder. Lawson, 163 Ill. 2d at 228-29. The State's only remaining evidence consisted of highly inconsistent eyewitness testimony. The court held that "[w]ithout the assistance of a shoeprint expert, defense counsel could not be sufficiently prepared to attack the scientific basis of Peck's several opinions, particularly with respect to those factors Peck relied on in positively identifying the impressions as made by defendant's shoes." Lawson, 163 Ill. 2d at 229. A defense expert could have offered his own opinions, which might have been entirely different from the State's expert. Lawson, 163 Ill. 2d at 229.

Moreover, the court held the State possessed an advantage in

-14-

1-09-0197

being able to present its expert's opinion when defendant could not. Lawson, 163 Ill. 2d at 230, citing Little v. Armontrout, 835 F.2d 1240, 1245 (8th Cir. 1987). Our supreme court noted "[f]airness demands that defendant be allowed the means to do so." Lawson, 163 Ill. 2d at 230. Because a shoeprint expert's opinion was necessary to defendant's proving crucial issues in his case, the court held the lack thereof prejudiced him. Lawson, 163 Ill. 2d at 230.

In People v. Evans, 271 Ill. App. 3d 495, 498, 648 N.E.2d 964 (1995), the defendant maintained the trial court abused its discretion in denying her motion for an expert witnesses' fee because the defendant established both her indigence and the necessity of the expert's services in presenting her theory of self defense. This court noted "[t]here can be no dispute that the State must disburse funds to pay for the reasonable fees of necessary expert witnesses on behalf of indigent felony defendants" under section 113-3(d) of the Code. Evans, 271 Ill. App. 3d at 499. Holding there was ample support for the conclusion that the defendant sufficiently demonstrated her entitlement to expert assistance funding, the court found the record clearly established, and the State did not dispute, that she was in fact indigent. Evans, 271 Ill. App. 3d at 502. In concluding the indigent defendant was entitled to funds under

-15-

section 113-3(d), the court specifically noted that "[a]lthough a private law firm represented her, that firm apparently provided its services on a pro bono basis." Evans, 271 Ill. App. 3d at 502.

Although Evans only briefly touches on whether a private attorney representing a defendant pro bono may request funds for a necessary expert witness under section 113-3(d), the majority of other jurisdictions that have addressed the issue in detail have concluded that under the United States Constitution and their respective state statutes, indigent defendants represented by pro bono or retained counsel are entitled to state funding for expert witness fees. While not controlling, we find those cases persuasive on the issue of whether section 113-3(d) is intended to extend to indigent defendants not represented by court-appointed counsel.

In State v. Brown, 2006 NMSC 023, ¶13, 139 N.M. 466, 134 P.3d 753, the New Mexico Supreme Court held that under the state's indigent defense act and the state and federal constitutions, trial courts have the inherent authority to order state funding for expert witnesses and other ancillary services for indigent defendants represented by pro bono counsel. The court noted a defendant is: "constitutionally entitled to be provided with the basic tools of an adequate defense. That right

is not contingent upon the appointment of Department counsel; it is inherent under the state and federal Constitutions." Brown, 2006 NMSC 023, ¶25, 139 N.M. 466, 134 P.3d 753. Accordingly, the New Mexico Supreme Court found representation by the public defender was not necessarily required in order for indigent defendants to receive state funding for other necessary defense services. Brown, 2006 NMSC 023, ¶25 139 N.M. 466, 134 P.3d 753.

In State v. Burns, 2000 UT 56, ¶27, 28, 4 P.3d 795, the Utah Supreme Court considered whether section 77-32-1 of the Utah Code of Criminal Procedure (Utah Code Ann. § 77-32-1 (1990)) specifically conditioned expert assistance for indigent defendants on the appointment of state-funded counsel. Section 77-32-1 set minimum standards that must be provided for indigent defendants in criminal cases, including requiring the State to provide "the investigatory and other facilities necessary for a complete defense." Burns, 2000 UT 56, ¶28, 4 P.3d 795, quoting Utah Code Ann. § 77-32-1 (1990). The Utah Supreme Court noted the only requirements for receiving public assistance for expert witnesses are proof of necessity and establishment of indigence. Burns, 2000 UT 56, ¶28, 4 P.3d 795. While the court recognized the issue of who is paying for a defendant's attorney may be a factor in determining the defendant's indigency, it is not a determinative factor. Accordingly, the court held "it is clear

-17-

from the plain language of that section that a county must '[p]rovide the investigatory and other facilities necessary for a complete defense' to every indigent person, not just to those represented by the [public defender]." Burns, 2000 UT 56, ¶28, 4 P.3d 795; see also English v. Missildine, 311 N.W.2d 292, 293 (Iowa 1981) (Iowa's Supreme Court held "[t]he rule is authority for public payment of witnesses for indigents at trial. It does not distinguish between indigents who are represented by court-appointed and private counsel"); Williams v. Martin, 618 F.2d 1021, 1027 (4th Cir. 1980) (trial judge's refusal to provide publicly funded expert to indigent defendant with private counsel was violation of sixth and fourteenth amendments); People v. Worthy, 109 Cal. App. 3d 514, 167 Cal. Rptr. 402 (1980) (defendant represented by private counsel constitutionally entitled to publicly funded experts if defendant showed indigency and necessity).

Here, the only requirements explicitly found in section 113-3(d) for providing state funding for an expert witness are that the defendant be "indigent" and that the expert witness be "necessary" to present a proper defense. See 725 ILCS 5/113-3(d) (West 2008). Nothing in the language of section 113-3(d) of the Code indicates the legislature intended to condition an indigent defendant's right to seek funds for a necessary expert witness on

whether he is represented by court-appointed counsel. Reading such an exception into the statutory language would be inconsistent with the long-recognized principle in Illinois that an indigent defendant may be entitled to funds to hire an expert witness where the expert's testimony is deemed critical to a proper defense. Clankie, 180 Ill. App. 3d at 730, citing Glover, 49 Ill. 2d at 82-83. We will not depart from the plain meaning of section 113-3(d) by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent of the statute. Black, 394 Ill. App. 3d at 939.

We find that under a plain reading of section 113-3(d), a defendant is entitled to funds if he establishes that he is indigent and that an expert witness is necessary for an adequate defense. See 725 ILCS 5/113-3(d) (West 2008). Moreover, such an entitlement to funds under section 113-3(d) occurs regardless of whether the indigent defendant receives assistance of counsel from a court-appointed attorney. See Evans, 271 Ill. App. 3d at 502. See also Brown, 139 N.M. at 472; Burns, 4 P.3d at 801. It is the indigency of the defendant that matters under section 113-3(d) of the Code, not who represents the defendant at trial. Accordingly, we find the trial court abused its discretion in denying the indigent respondent's motion for funds for a necessary DNA expert witness based on the fact that he was

represented by pro bono counsel.

Notwithstanding, the State contends the alleged error was harmless beyond a reasonable doubt in this case given defense counsel's ability to secure alternative assistance and counsel's adequate cross-examination of the State's DNA expert.

In order for a trial error to be considered harmless, there must be no reasonable probability that the outcome of the trial would have been different if the error had not occurred. People v. Flournoy, 336 Ill. App. 3d 739, 746, 784 N.E.2d 353 (2002).

In this case, the DNA expert's testimony regarding respondent's match to the DNA profile generated from the seminal fluid stain found on the victim's swim trunks was the strongest evidence presented by the State. Testimony presented by the defense clearly established the victim's description of his attacker did not match respondent's alleged description at the time of the attack. According to Detective Berman, the victim described the person who assaulted him as "in his 30's, about six feet tall, slim build with braided hair pulled back into a ponytail, wearing a red shirt, dark pants." Respondent's adoptive mother testified that in June 2005, respondent, a minor, did not have any tattoos or facial hair. She also said respondent was only 5 feet 6 inches tall in 2005. In finding respondent guilty in this case, the trial court specifically

-20-

noted:

> "[T]he Court keeps in mind that the testimony
> was coming from a six year old and if the
> Court were just only to rely on the six year
> old, [A.S.'s] testimony, there might be a
> different verdict.  But there is something
> more in this case.  There is a DNA sample.
> And according to the testimony of the
> chemist, DNA expert, says that the match was
> a profile one and four cotillion (phonetic)
> for an African-American, one in six cotillion
> for a white individual, and one in three
> point nine cotillion for a Hispanic
> individual and that is proof beyond a
> reasonable doubt."

Contrary to the State's contention, nothing in the record suggests defense counsel was able to obtain expert assistance with the critical DNA evidence from an alternate source before respondent's trial.

During the status hearings prior to the start of respondent's trial, defense counsel sought several continuances in order to see if he could obtain pro bono expert services in regard to DNA, and to continue his own investigation and research

into the critical DNA evidence.  During a status hearing on June 2, 2008, the trial court asked defense counsel whether he had hired a DNA expert after counsel requested another continuance. Defense counsel responded:

> "I have not been able to retain an expert.
> We don't have funds, as the Court knows.  We
> have a request for funds to be made
> available.  Because we do not have funds, I
> am searching for some pro bono services and
> also doing as much independent research as
> possible."

When the State requested a continuance during a status hearing on August 18, 2008, defense counsel told the court he had no objection to the continuance because:

> "Understanding the scientific evidence is a
> matter of self-education, this weekend I came
> across an article that basically gives me
> some information that I would like to look
> into before [the State's DNA expert]
> testifies."

Defense counsel further explained he wanted additional time to prepare for trial in order to investigate a recent scientific

1-09-0197

article he had discovered regarding the reliability of DNA identification. Defense counsel did not present a DNA expert witness at trial.

We do agree with the State that the trial court's error was harmless in this case, however. Although we stress the trial court clearly erred in denying respondent the funds to obtain a necessary expert in light of his indigency, we find there is nothing in the record to suggest a reasonable probability exists that having a DNA expert to assist the defense would have changed the ultimate result of the proceeding. People v. Henney, 334 Ill. App. 3d 175, 186, 777 N.E.2d 484 (2002).

After comparing respondent's DNA profile from the buccal swab to the DNA profiled identified from the stain on the victim's suit, Aper offered his expert opinion that the DNA profiles matched. Aper testified the DNA profile would be expected to occur in 1 out of 4.6 quintillion black individuals, 1 out of 2.6 septillion white individuals, or 1 out of 3.7 septillion Hispanic individuals.

In support of our conclusion the error in this case was harmless, we note that on cross-examination defense counsel had the opportunity to extensively examine the State's DNA expert. Aper explained in response to defense counsel's questioning that DNA statistics are actually based on how frequently you would

find that profile in the random population, not that it belongs to a certain person. Aper admitted he could not tell how the stain got onto the swimsuit. Aper also admitted the stain could have been transferred onto the swimsuit if the suit had been dropped onto some fluid on the ground or the victim sat in the fluid.

Nothing in Aper's direct or cross-examination testimony suggests there were any potential discrepancies or errors in the DNA test results. Accordingly, we fail to see how a DNA expert would have made defense counsel's cross-examination of Aper any more effective in this case.

In light of the overwhelming nature of the DNA evidence presented in this case, we simply cannot find the trial court's error in choosing to deny respondent's motion to fund prejudiced the outcome of his case.

### B. Failure to Recuse Counsel

Respondent contends the trial court further exacerbated the error in denying funds by failing to remove defense counsel after counsel said he could not adequately represent respondent without receiving funds to obtain the expert witness.

Our supreme court has recognized a judge has the discretion to "remove defense counsel whose performance is so inadequate

that the defendant is not receiving the level of assistance of counsel guaranteed by the sixth amendment." Burnette v. Terrell, 232 Ill. 2d 522, 535, 905 N.E.2d 816 (2009), citing People v. Johnson, 192 Ill. 2d 202, 207, 735 N.E.2d 577 (2000).

Here, the trial court informed defense counsel on several occasions that he had an ethical responsibility to withdraw from the case if he felt he "cannot represent this minor in the nature and structure of your office." Defense counsel refused the court's invitation to withdraw, informing the court that he felt he was adequately qualified to represent the minor notwithstanding the lack of funds to hire an expert.

During the status hearings leading up to respondent's trial, defense counsel informed the court he was pursuing funding and exploring pro bono assistance options in order to obtain an expert witness. He also informed the court that he was conducting extensive research on his own in order to understand and defend against the complex DNA evidence at issue in the case. Nothing in the record concretely suggests defense counsel was incapable of adequately representing respondent.

In light of the record before us, we cannot say the trial court abused its discretion by failing to force defense counsel to recuse himself.

1-09-0197

## II. Ineffective Assistance of Counsel

Respondent contends defense counsel provided ineffective assistance of counsel in this case.

In order to establish a claim of ineffective assistance of counsel, a defendant must show his attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness and that, without those errors, there was a reasonable probability his trial would have resulted in a different outcome. People v. Ward, 371 Ill. App. 3d 382, 434, 862 N.E.2d 1102 (2007), citing Strickland v. Washington, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68 (1984).

"An attorney's performance must be evaluated from counsel's perspective at the time the contested action was taken and will be considered constitutionally deficient only if it is objectively unreasonable under prevailing professional norms." People v. Bailey, 232 Ill. 2d 285, 289, 903 N.E.2d 409 (2009). Courts must indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct at 2065; People v. Edwards, 195 Ill. 2d 142, 163, 745 N.E.2d 1212 (2001). Mistakes in strategy or tactics alone do not amount to ineffective assistance of counsel; nor does the fact

1-09-0197

that another attorney may have handled things differently.  Ward, 371 Ill. App. 3d at 434, citing People v. Palmer, 162 Ill. 2d 465, 476, 643 N.E.2d 797 (1994).

### A. Failure to Withdraw

Respondent contends defense counsel provided ineffective assistance by failing to withdraw as counsel.  Specifically, respondent contends defense counsel had a duty to withdraw after the trial court improperly denied funds for a DNA expert witness and defense counsel realized he had no other means to obtain funds to secure the witness.

Generally, decisions concerning which witnesses to call and which evidence to present on a defendant's behalf are viewed as matters of trial strategy, which are generally immune from ineffective assistance claims.  People v. Hamilton, 361 Ill. App. 3d 836, 847, 838 N.E.2d 160 (2005).

Defense counsel made it clear during several status hearings that he was investigating and conducting extensive research into the State's DNA evidence in order to adequately represent respondent at trial.  Defense counsel also subjected Aper to an extensive and thorough cross-examination, stressing the fact that the State's DNA expert could not tell how the seminal fluid stain got onto the swimsuit and that the stain could have been

transferred onto the swimsuit if the suit had been dropped onto some fluid on the ground or the victim sat in the fluid. Defense counsel was also able to get the State's expert to admit that DNA statistics are actually based on how frequently you would find that profile in the random population, not that it belongs to a certain person.

Although we recognize a DNA expert could have potentially strengthened respondent's case, we cannot say defense counsel's decision not to withdraw after the trial court denied funds for such an expert constituted ineffective assistance considering the expert's assistance would not necessarily have made his conviction any less likely. See Hamilton, 361 Ill. App. 3d at 848 ("[Counsel] made it clear that he was diligent in investigating [the expert's] notes and reports and thoroughly challenged his conclusions in an extensive cross-examination. Had defendant called his own expert witness, with qualifications and experience similar to those of [the expert], the circuit court would not have been under any automatic obligation to disregard [the expert's] testimony or defer to that of defendant's expert and thus find for acquittal. Because the testimony of an expert witness in favor of defendant would not have made his conviction any less likely, we cannot find that [counsel's] representation was ineffective").

B. Other Ineffective Assistance Issues

Respondent contends defense counsel provided ineffective assistance by almost violating a motion to exclude witnesses from respondent's trial. Specifically, respondent contends defense counsel's failure to keep respondent's adoptive mother out of the courtroom during respondent's trial, in violation of a motion to exclude witnesses, could have prevented her from being able to testify. Respondent contends her presence in the courtroom also undermined her credibility in the eyes of the court.

We note, however, that respondent's adoptive mother was actually allowed to testify by the trial court, even though the State objected to her presence during the trial. Moreover, nothing in the record supports respondent's contention that the trial court found her testimony less credible based on her presence in the courtroom before testifying.

Respondent also contends defense counsel provided ineffective assistance where he misunderstood the basic elements of the offense of aggravated criminal sexual assault.

In support of his contention, respondent suggests defense counsel incorrectly argued during respondent's motion for a directed finding and during closing argument that there was no evidence of penetration--a key element to the offense of

aggravated criminal sexual assault--because the victim testified the offender had only rubbed his penis on the victim's anus without actual penetration.  Respondent notes Illinois courts have recognized that any contact, however slight, between the sex organ or anus of one person and the sex organ, mouth or anus of another person may constitute sexual penetration sufficient to support an aggravated criminal sexual assault charge.  See People v. Bofman, 283 Ill. App. 3d 546, 552, 670 N.E.2d 796 (1996).  Respondent contends that because counsel misunderstood the basic elements of the offense in arguing penetration had not occurred, he effectively admitted to the sexual conduct necessary to support respondent's conviction.

Mistakes in strategy or tactics alone do not amount to ineffective assistance of counsel; nor does the fact that another attorney may have handled things differently.  Ward, 371 Ill. App. 3d at 434, citing Palmer, 162 Ill. 2d at 476.  Moreover, we note that in the interest of judicial economy, we may first determine whether or not a defendant has suffered any prejudice as a result of the alleged deficiency before ever determining whether one exists.  People v. Arna, 263 Ill. App. 3d 578, 586, 635 N.E.2d 815 (1994).

Given the overwhelming nature of the DNA evidence and the victim's unrebutted testimony regarding the circumstances of the

attack, we fail to see how respondent's ineffective assistance claim suggest that, without such an error, a reasonable probability exists that his trial would have resulted in a different outcome.  See Ward, 371 Ill. App. 3d at 434.  The victim's testimony clearly established that the attacker rubbed his penis on the victim's anus twice.  Such testimony clearly supported the aggravated criminal sexual assault charges, regardless of any comments defense counsel may have made.  The DNA evidence also established respondent's identity as the attacker beyond a reasonable doubt.

Because respondent is unable to establish any prejudice as a result of the alleged deficiencies raised above, we find respondent was not denied the effective representation of counsel.  See Arna, 263 Ill. App. 3d at 587.

CONCLUSION

We affirm the trial court's judgment.

Affirmed.

FITZGERALD SMITH, and LAVIN, JJ., concur.

1-09-0197