NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180109-U

NO. 4-18-0109

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 5, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| TERANCE McKENZIE, | ) | No. 16CF591 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Debra L. Wellborn, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, finding defendant forfeited his argument that the trial court erred in denying his request for funds to obtain an expert witness.

¶ 2   Defendant, Terance McKenzie, appeals directly from his conviction of unlawful possession of a controlled substance. On appeal, defendant argues the trial court erred in denying his request for funds to obtain an expert witness to test the alleged narcotic. We affirm.

¶ 3                  I. BACKGROUND

¶ 4   On October 4, 2016, defendant was arrested and charged with one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2012)), alleging that he "knowingly and unlawfully had in his possession less than 30 grams of a substance containing heroin ***." Defendant posted bond the same day and requested that the trial court appoint the

public defender's office to represent him. He filed an affidavit of assets and liabilities along with his request, in which he reported that he was unemployed and had no income or disabilities. Defendant further reported total assets valued at $223 and monthly expenses of $100. The trial court found defendant to be indigent and appointed the public defender's office.

¶ 5    At a March 3, 2017, pretrial conference, defendant informed the court that he had retained private counsel. Counsel entered his appearance two weeks later. Defense counsel subsequently indicated that in March 2017, defendant had paid him a $1500 retainer and signed an attorney-client agreement whereby defendant promised to pay $195 per hour for counsel's services.

¶ 6    In June 2017, defendant filed a "motion for defendant[']s testing of alleged contraband/illegal substances." He acknowledged that the Illinois State Police crime lab had already tested the substance and found "a residue amount of heroin," but, nonetheless, he alleged that the substance did not contain heroin and "request[ed] the opportunity to have the alleged drug tested by an independent lab at [d]efendant[']s cost." The State did not object to defendant's motion, stating at a pretrial conference: "And as far as the motion goes, I have no problem with it. He has the right to independent testing. If he wants to have independent testing, he's going to pay for it."

¶ 7    Defense counsel subsequently moved to withdraw his representation due to an illness in his family, and on August 29, 2017, at a hearing on his motion to withdraw, the following exchange occurred between defense counsel, the court, and defendant:

"[DEFENSE ATTORNEY]: The situation here is that if you review the file, [defendant] wanted and still wants this alleged drug to be tested by an independent lab. That was granted, but it was granted at his cost. He sent me a

place that he wanted it tested and it was the same lab that already tested it for the State of Illinois. I told him that, and he says[,] [']*I want the State to pay for it*.['] Well, the State is not going to pay for that. And I don't know what I'm supposed to do. But he wants it tested, you know, he—I'll have it tested any place he wants it tested, but I'm not going to pay for it.

THE COURT: Right.

DEFENDANT: Your Honor.

THE COURT: Yes.

DEFENDANT: This didn't end up in an argument. When I told him over the phone, I made myself clear. We were both happy. He said he would ask if the State could pay for it but then I get to court and he wants to withdraw. You know, that's a blind side. I didn't—you know, I paid him.

THE COURT: *Well, I would tell you that the State is not going to pay for additional testing—*

DEFENDANT: Understood.

THE COURT: —in this case so.

DEFENDANT: I mean, in that case, I would have hoped he would have just simply told me that, but, you know, since they won't pay for it, I would like to move on with him." (Emphases added.)

¶ 8　　　　Following the hearing, the court allowed defense counsel to withdraw, and defendant again requested that the public defender's office be appointed to represent him. The trial court made the following inquiry into defendant's request for representation:

"THE COURT: Okay. [Defendant], just on the record, let me ask you a couple of questions.

Like, do you own your own home?

DEFENDANT: No.

THE COURT: Do you own any vehicles outright?

DEFENDANT: No.

THE COURT: Are you employed at this time?

DEFENDANT: No, due to this case alone, is why I lost my job.

THE COURT: Okay. All right. Okay. So you don't have—you're telling me you don't have any sources of income—

DEFENDANT: Right.

THE COURT: —to pay a down payment now for an attorney?

DEFENDANT: No.

THE COURT: Okay. All right. Based upon that, the court will appoint a— will find that [defendant] qualifies for the public defender's office."

¶ 9        In December 2017, defendant's case proceeded to a jury trial. During cross-examination of the forensic scientist who had tested the disputed substance, defense counsel asked how frequently independent labs found different results than the State when testing controlled substances. The trial court sustained the State's objection to this line of questioning. After presentation of the evidence, the jury found defendant guilty of unlawful possession of a controlled substance.

¶ 10        A presentence investigative report (PSI) was prepared for sentencing. According to the PSI, filed on January 29, 2018, defendant reported that he was diagnosed with sickle cell

- 4 -

anemia in 2000 and "receives $1,003 per month in benefits." Defendant also reported that he worked for his uncle " 'on and off' from 2005 to 2016" and began working for Federal Express in November 2017, making $14 per hour; he paid between $300 and $800 each month in rent from 2012 to 2017; and he "pays over $1,000 per month in child support."

¶ 11    In January 2019, the trial court sentenced defendant to 18 months' probation. Defendant filed no posttrial or postsentencing motions.

¶ 12    This appeal followed.

¶ 13                    II. ANALYSIS

¶ 14    On appeal, defendant argues the trial court erred in denying his request for funds to obtain an expert witness. "A trial court's denial of a motion for funds for an expert witness is generally reviewed for an abuse of discretion." *In re T.W.*, 402 Ill. App. 3d 981, 986, 932 N.E.2d 125, 130 (2010).

¶ 15                    A. The Right to Compulsory Process

¶ 16    In criminal prosecutions in Illinois, as in all states, defendants enjoy the right to compel the attendance of witnesses in their behalf. See U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to *** have compulsory process for obtaining witnesses in his favor ***."); Ill. Const. 1970, art. I, § 8 ("In criminal prosecutions, the accused shall have the right to *** have process to compel the attendance of witnesses in his or her behalf ***."). While the right to compel the attendance of witnesses generally does not include the additional right to have the State pay for those witnesses, our supreme court has recognized that "in certain instances *involving indigents*, the lack of funds with which to pay for the witness will often preclude him from calling that witness and occasionally prevent him from offering a defense." (Emphasis added.) *People v. Watson*, 36 Ill. 2d 228, 233, 221 N.E.2d 645, 648 (1966);

see also *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) ("[A] criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense."). Thus, to ensure indigent defendants are not deprived of the substance of their fundamental right to compulsory process, "Illinois has long recognized that a defendant may be entitled to funds to hire an expert witness where expert testimony is deemed critical to a proper defense." *People v. Clankie*, 180 Ill. App. 3d 726, 730, 536 N.E.2d 176, 179 (1989). To establish an entitlement to funds, the indigent defendant must demonstrate that (1) "the expert services sought are necessary to prove a crucial issue in the case" and (2) "the defendant's financial inability to obtain his own expert will prejudice his case." *Id.*; see also *People v. Lawson*, 163 Ill. 2d 187, 221, 644 N.E.2d 1172, 1188 (1994).

¶ 17                          B. Defendant Forfeited His Argument

¶ 18          Initially, the State argues defendant forfeited his argument by failing to raise it in the trial court and include it in a posttrial motion. See *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675 ("To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion."). Defendant, relying on *People v. Djurdjulov*, 2017 IL App (1st) 142258, ¶ 45-46, 86 N.E.3d 1139, responds that he properly preserved this issue for review despite the fact that he did not raise it in a posttrial motion "because it involves a constitutional issue that was addressed at trial."

¶ 19          In *Djurdjulov*, the defendant argued on appeal that the trial court had committed reversible error "when it denied his motion for fees so that he could hire an expert to analyze *** cell phone records." *Id.* ¶ 44. Although the defendant failed to include this argument in his motion for a new trial, the First District held that the defendant had not forfeited it, reasoning

that "[c]onstitutional issues that were previously raised at trial and could be raised later in a postconviction petition are *not* subject to forfeiture on direct appeal." (Emphasis in original and internal quotation marks omitted.) *Id.* ¶ 45. We find defendant's reliance on *Djurdjulov* misplaced, as the relevant facts in this case differ significantly from those in *Djurdjulov*.

¶ 20 There, due to the importance of cell phone records to the prosecution's case, the defendant "filed a [pretrial] motion asking the court for funds so that [he] could pay an expert to analyze the cell phone records and help with cross-examination of the prosecution's cell phone expert." *Id.* ¶ 9. The trial court denied the defendant's motion for funds following a hearing, at which the defendant presented evidence regarding his inability to pay. *Id.* The defendant filed a motion for a new trial after his conviction, but he neglected to argue that the court had erred in denying his motion requesting funds. *Id.* ¶¶ 33, 44. As noted above, the First District found that the defendant's failure to include the issue in his posttrial motion did not result in forfeiture because, in relevant part, the issue was "previously raised at trial ***." *Id.* ¶ 45.

¶ 21 Here, unlike the defendant in *Djurdjulov*—who raised his argument in the trial court by "fil[ing] a motion asking the court for funds" and then presenting evidence on his motion at a hearing—defendant failed to raise the instant argument in the trial court. *Id.* ¶ 9. Instead, defendant's privately retained counsel filed a pretrial motion "request[ing] the opportunity to have the alleged drug tested by an independent lab *at [d]efendant[']s cost.*" (Emphasis added.) Additionally, defendant did not make a request for funds at the hearing on defense counsel's motion to withdraw when, in supporting his motion, defense counsel told the court, "[Defendant] says[,] [']I want the State to pay for [the test.']" We do not find that this lone statement, made in passing by defense counsel, constitutes a properly raised claim by defendant

that he had a constitutional right to funds to obtain an expert witness due to his indigency. Thus, defendant has forfeited his argument on appeal by failing to raise it in the trial court.

¶ 22                                  C. Defendant Fails to Establish Plain Error

¶ 23          Alternatively, defendant asks us to review his argument for plain error.

¶ 24          The plain-error doctrine allows us to consider a forfeited claim when "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007). "Under both prongs of the plain-error doctrine, the burden of persuasion remains with the defendant. [Citation.] When a defendant fails to establish plain error, the result is that the procedural default must be honored." (Internal quotation marks omitted.) *People v. Naylor*, 229 Ill. 2d 584, 593, 893 N.E.2d 653, 659-60 (2008). We begin by determining whether defendant established that a clear or obvious error occurred. See, *e.g.*, *Sebby*, 2017 IL 119445, ¶ 49 ("The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error ***.").

¶ 25          Even assuming, *arguendo*, we could characterize the trial court's statement at the hearing on defense counsel's motion to withdraw—*i.e.*, "Well, I would tell you that the State is not going to pay for additional testing"—as a denial of a request for funds, we still would not find clear or obvious error as defendant cannot establish that he was indigent. As briefly discussed earlier, the standard developed by the supreme court for determining whether a criminal defendant has a constitutional right to funds for an expert witness presupposes that the

defendant is indigent. See *Watson*, 36 Ill. 2d at 233 ("[I]n certain instances *involving indigents*, the lack of funds with which to pay for the witness will often preclude him from calling that witness and occasionally prevent him from offering a defense." (Emphasis added.)). Thus, if a defendant cannot demonstrate that he was, in fact, indigent, it follows that it cannot be error to deny a request for state funds to pay for an expert witness's services.

¶ 26        Here, defendant points only to his financial affidavit, which was relied on by the trial court in initially appointing the public defender's office, in support of his assertion that he established his indigency. In that affidavit, filed on October 4, 2016, defendant reported that he was unemployed and had no income or disabilities. Defendant further reported total assets valued at $223 and monthly expenses of $100. However, the information defendant reported in his financial affidavit is contradicted by the information he provided during the preparation of the PSI. According to the PSI, filed on January 29, 2018, defendant reported that he was diagnosed with sickle cell anemia in 2000 and "receives $1,003 per month in benefits." Defendant also reported that he worked for his uncle " 'on and off' from 2005 to 2016" and began working for Federal Express in November 2017, making $14 per hour; he paid between $300 and $800 each month in rent from 2012 to 2017; and he "pays over $1,000 per month in child support." Defendant's claim of indigence is further contradicted by the fact that in March 2017, he paid $1500 to retain private counsel and agreed to pay him $195 per hour for his services. Accordingly, since the record contradicts defendant's conclusory assertion that he was indigent, we find he has failed to establish plain error and we therefore must honor his forfeiture. See *Naylor*, 229 Ill. 2d at 593.

¶ 27                D. Defendant's Ineffective-Assistance Claim

¶ 28    In closing, we note that defendant also argues, in the alternative, that we may reach the merits of his argument by finding that his counsel was ineffective for failing to properly preserve it by including it in a motion for a new trial. Ineffective-assistance claims are reviewed *de novo*. *People v. Miramontes*, 2018 IL App (1st) 160410, ¶ 13, 116 N.E.3d 199.

¶ 29    When analyzing an ineffective-assistance claim, we apply the familiar two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to "show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cherry*, 2016 IL 118728, ¶ 24, 63 N.E.3d 871. A defendant must satisfy both prongs of the *Strickland* test; "the failure to establish either precludes a finding of ineffective assistance of counsel." *Id.*

¶ 30    We reject defendant's ineffective-assistance claim because, as discussed above, it would not have been error for the trial court to deny a request for funds. Therefore, a posttrial motion raising an argument to the contrary would have been unsuccessful, which means defendant is unable to show that he suffered prejudice from counsel's failure to include his argument in a posttrial motion. As a result, defendant's claim of ineffective assistance necessarily fails. See, *e.g.*, *id.* ¶ 31 ("[T]o prevail on an ineffective assistance claim under *Strickland*, a defendant must establish both prongs of the *Strickland* test, such that the failure to establish either precludes a finding of ineffective assistance of counsel.").

¶ 31                                    III. CONCLUSION

¶ 32    For the reasons stated, we affirm the trial court's judgment.

¶ 33    Affirmed.